# BOUGHNER v. MEYER.

1. A wager as to whether an execution can be collected, cannot be considered as a wager upon any game within the meaning of the statute. But as between the original parties to such a transaction, a check given in payment is void, as being in contravention of sound policy.

2. Such a check, however, in the hands of a *bona fide* holder, for value received in due course of trade, must be protected.

3. It is not sufficient to aver, in pleading, that the assignee is not a *bona fide* holder, in an action by the assignee against the drawer; the defendant

must aver that the plaintiff had notice of the original transaction, and the burden of proof of bad faith rests with him who assails the title on that ground.

*Appeal from District Court of Arapahoe County.*

THE facts are stated in the opinion.

Messrs. THOMAS GEORGE and P. W. FAUNTLEROY, for appellant.

Mr. E. P. JACOBSON, for appellee.

THATCHER, C. J. The appellant (plaintiff below) by his complaint, alleges that on the 24th day of August, A. D. 1878, the defendant made his check, whereby for value received, he directed the Colorado National Bank to pay to Isador H. Kastor, on demand, one hundred dollars, and caused the same to be delivered to the said Kastor on the 4th day of September, A. D. 1878; that said check was duly assigned for value to the plaintiff, and he is the lawful owner and holder thereof ; that the same was presented to said bank for payment; and that payment thereof was refused.

The defendant, by his answer, sets up that he made such check upon a wager with said Kastor whether he (the said Kastor) would collect a certain execution against a partnership firm known as I. Heller & Co. then in the hands of the sheriff of Arapahoe county, and upon no other consideration whatever.

To the sufficiency of this answer the plaintiff demurred, and the demurrer was overruled.

By Chap. 24, Sec. 140, Gen'l Laws, p. 299, it is provided that all contracts, promises, agreements, conveyances, securities and notes made, given, granted, executed, drawn or entered into, where the whole or any part of the consideration thereof shall be for money, property or other valuable thing, won by any gaming, or by playing at cards, or any gambling device or game of chance, or by betting on the side or hands

of any person gaming, or for the reimbursing, or paying any money or property knowingly lent or advanced at the time and place of such play, to any person or persons so gaming or betting, *shall be utterly void and of no effect.*

The provisions of this section are very broad and sweeping. Even in the hands of *bona fide* purchasers, negotiable paper founded in whole or in part upon a gambling or gaming consideration, within the meaning of this section, is utterly void.

The language employed is open to no other construction. The protection which the law extends to an innocent holder, who for value in the usual course of trade has received negotiable paper, is of no avail when the statute in terms or by unavoidable implication has pronounced the instrument absolutely void. Stricken with nullity at its birth, it can thereafter gain no vitality. There is, however, a distinction recognized by the authorities between the *status* of negotiable paper held by a *bona fide* purchaser where the original consideration is by the courts adjudged to be illegal, and negotiable paper held under like circumstances, when the statute declares such paper to be void.

In *Vallett* v. *Parker*, 6 Wend. 615, the court says: "Whenever the statute declares notes void, they are and must be so, in the hands of every holder; but where they are adjudged by the court to be so for failure, or the illegality of the consideration, they are void only in the hands of the original parties, or those who are chargeable with or have had notice of the consideration."

To the same effect see *Weed* v. *Bond*, 21 Geo. 195; *Glenn* v. *The Farmers' Bank of N. C.* 70 N. C. 191; *Bailey* v. *Taber*, 5 Mass. 285; *The City of Aurora* v. *West*, 22 Ind. 88.

Is the wager in question within the prohibition of the statute? Was the consideration of the check "*won by any gaming*," within the meaning of the section above quoted?

If the wager was upon any game, the check is absolutely void in the hands of every holder. Horse-racing has been

decided to be gaming within the intent of the language here used. The word gaming is held to extend "to physical contests, whether of man or beast, when practiced for the purpose of deciding wagers, or for the purpose of diversion, as well as to games of hazard or skill, by means of instruments or devices.

"Such were the Olympic and Nemean games among the Greeks, and Apollinian and Capitoline games among the Romans." *Tatman* v. *Strader*, 23 Ill. 493; *Shopshire* v. *Glascock et al.* 4 Mo. 536; *Boynton* v. *Curle*, 4 Mo. 599.

But a wager as to whether an execution can be collected, we are constrained to conclude, cannot be considered as a wager upon any game. It would, it is believed, be judicial legislation to hold that money won upon such a wager is money won by any gaming.

The act of March 2, 1864 (Sess. Laws 1864, p. 97, Sec. 3): "To suppress gambling and gambling houses," extended in terms to all negotioble paper where the consideration was for money "won on any wager;" but the Revised Statutes of 1868 contain the same provisions as the section now under examination, omitting the clause relating "to any wager."

Where the effect of a statute is to make void a certain class of negotiable paper in the hands of innocent purchasers, it certainly should not be extended to cases not fairly within its provisions.

As between the original parties to the wager in question, we are clearly of the opinion that the check was void. Even at common law a wager against sound policy was not recoverable. That the wager that a certain execution will not be collected, is in contravention of sound policy, we entertain no doubt. The moment such a wager is made, the one party has a pecuniary interest which might influence him to interfere with the due administration of justice, by seeking to defeat the process of court. To hold that such a wager is valid, is to encourage unwarranted intermeddling with the mandates of judicial tribunals. Although void as against sound policy, as

it is not within the statutory prohibition, the check, in the hands of a *bona fide* holder, for value received in due course of trade, must be protected. By the current of decisions, and in accordance with the recognized policy of commercial law, negotiable paper, where the consideration arises from a wagering contract, will not be declared void in the hands of *bona fide* purchasers, unless so enacted by statute. *Haight* v. *Joice*, 2 Cal. 64. Nor is this doctrine thought to be variant from the rule laid down in *Eldred* v. *Malloy*, 2 Col. 320.

In that case, the wagering contract was held to be void, but whether, if the instrument had been negotiable, it would not have been protected in the hands of a *bona fide* purchaser, was not decided, the court expressly holding that the instrument sued on was not negotiable.

Was the answer which merely set up that which would have been a good defense between the original parties sufficient? If this wagering contract was within the prohibition of the statute, the defendant need not to have alleged that the plaintiff had notice of the illegal character of the transaction, which ultimated in giving the check, for in such case, into whose hands soever it might have passed it was equally void. But this check originating a transaction not within the interdict of the statute, is, in the hands of a *bona fide* purchaser, unaffected by the fact that it arose out of an illegal act, and it can be by such holder collected.

In such case the defendant must aver that the plaintiff had notice of the original transaction, leaving the circumstances by which such notice is to be proved, directly or indirectly, to be established by evidence. It is not enough to allege merely that he is not a *bona fide* holder. *Uther* v. *Riche*, 10 Adol. & El. 411; Daniels on Neg. Instruments, Sec. 770. And the burden of proving that the check was purchased in bad faith rests upon him who assails the title on that ground. *Goodman* v. *Simonds*, 20 How, 343 (U. S. S. C.); *Swift* v. *Tyson*, 16 Peters, 1; Redfield & Bigelow's Lead. Cas. on Bills of Ex. & Prom. Notes, p. 186 *et seq.* and 239 *et seq.;* Daniels on Neg. Instruments, Sec. 1503.

From what we have said it follows that the demurrer to the answer should have been sustained. The judgment will be reversed and the cause remanded, for further proceedings not inconsistent with the views here expressed.

*Reversed.*