ATCHISON, T. & S. F. R. CO. v. BETTS.

1. Under the statute creating a liability against a railroad company for killing stock, such liability is independent of any question or element of negligence; nor can such imposition of the liability be regarded as a penalty.

2. Courts do not take judicial notice of the statutes of other states; they must be shown like other facts.

*Appeal from Las Animas County Court.*

THIS was an action brought by appellee, F. G. Betts, against the appellant, the Atchison, Topeka & Santa Fe Railroad Company, before a justice of the peace of Las Animas county, for the value of a mule which had been killed upon the railroad of appellant. From the judgment of the justice an appeal was taken to the county court, and trial was there had *de novo* and to a jury.

All the evidence given at the trial was the testimony of appellee, which was as follows: "I am plaintiff in this cause. In the month of December, A. D. 1882, I owned a mule which was killed by defendant. I lived at said

time in the city of Albuquerque, territory of Mew Mexico. I was using at said time the mule which was killed, with other teams. There was no hay in town. I turned the mule which was killed loose with the other animals which I was using in the town of Albuquerque, and about one-half mile from the depot of defendant, in said town. It was in the evening when the mule was turned loose, and I found it the next day about 11 o'clock, lying upon the track of defendant, dead. It was lying in the depot yards near the depot of defendant, with its head lying across the rail of one track. I examined the mule, and found that one side of its head was mashed, and its skull broken. I skinned that part of the head which was injured, and found the skull was mashed and broken. The mule was worth $200. The tracks made by the mule indicated that it was struck eighteen or twenty feet away from where it lay, on another track, by the cars of defendant. Had notice describing the mule, cause of its death, and value made out, sworn by me, and served on the station and depot agent. Had an appraisement made by two persons, who valued the mule at $200. The notice and appraisement were sent to Topeka to the claim agent of defendant, and I was not able to get the papers returned to me."

The witness was here asked the following questions by plaintiff's attorney: "How did defendant operate the road at that place with regard to running its trains and switch-engines?" Question objected to by defendant as immaterial, and not showing any connection with the injury to the animal. Objection overruled, and exception by defendant. "*Answer.* The defendant was in the habit of running its switch-engines rapidly in and about the depot yards." The witness was asked the following question: "What was the custom of the people in and around Albuquerque as to allowing their stock to run at large?" Objected to by defendant as immaterial to the issues of the case. Objections overruled, and the defendant, by

its counsel, then and there excepted. "*A*. It was the custom of Mexicans and Americans to allow their stock to run at large there, and a large number of stock was running loose in the vicinity. *Q*. State whether the fact that large numbers of stock were running at large was known to the agents and employees of defendant at said time?" Objected to by defendant as immaterial to the issues. Objection overruled, and defendant, by its counsel, then and there excepted. "*A*. The agents and employees of defendant knew that such was true. *Q*. State whether the defendant by any of its agents admitted the killing of the mule." Objected to by defendant for the reason that such admissions would not bind defendant, and that no agency was shown. Objection overruled, and defendant, by its counsel, then and there excepted. "*A*. The agent at that point said if defendant killed the mule it would pay for it." The witness further testified that defendant did not have its yards or tracks in Albuquerque fenced; that defendant used, for a switch-engine, an ordinary engine, and not a double-header. There was a good deal of business done at that point by defendant, and defendant run its switch-engines very rapidly, night and day, both forward and backward. Albuquerque is situated in a stock country, where stock-raising is the principal business.

On cross-examination witness testified that he lived in the city of Albuquerque, New Mexico, at the time the mule was killed, and about one-half mile from the depot and yards of defendant, and that he turned the mule loose at his place of residence in the evening, and found it dead upon the track of defendant, and in the yards of defendant in said town of Albuquerque. Did not know how the mule was killed but from the circumstances as stated on direct examination. This was all the evidence offered by either of said parties to said cause.

The second instruction asked by the plaintiff below, and given by the court to the jury, was as follows: "If the

defendant railroad company, by gross negligence, killed plaintiff's mule then the defendant is liable for the dam-ages, and is so liable under common-law principles, with-out regard to the statutes of New Mexico."

The third and sixth instructions asked by defendant, and refused by the court, were as follows: "(3) If the jury believe, from the evidence, that the plaintiff turned his mule loose in the city of Albuquerque, New Mexico, and allowed it to stray upon the track of the defendant, where it was killed by defendant, then the plaintiff was guilty of negligence, and cannot recover the value of the mule." "(6) If the jury believe, from the evidence, that the plaintiff allowed the mule, for the value of which this suit is brought, to stray upon the track of defendant, and was there killed by the cars or engines of defendant, then the plaintiff was guilty of negligence, and cannot recover in this action."

The jury returned a verdict for the appellee, plaintiff below, in the sum of $200, and the appellant, defendant below, moved for a vacation thereof, and for a new trial, for the following reasons: (1) That the verdict in said cause is contrary to the evidence; (2) that said verdict is contrary to the law in said cause; (3) that the court erred in admitting the testimony of plaintiff concerning the manner of running the engines in yards of defendant, over objections of defendant; (4) that the court erred in admitting the testimony of plaintiff with regard to the general custom of allowing stock to run at large in Albu-querque, and that defendant, by its agents, had knowl-edge of this fact; (5) the court erred in refusing the third and sixth instructions asked by defendant; (6) the court erred in giving the second instruction asked by plaintiff.

The court overruled the motion for a new trial, and gave judgment for appellee, plaintiff below, upon the ver-dict. The appellant duly excepted, and brings the case here by appeal, and assigns errors as follows: "*First.* The court erred in admitting improper testimony for and on

behalf of the plaintiff in this: that it erred in permitting the plaintiff to testify as to the manner of operating defendant's road with regard to running its trains and switch-engines in the depot yard at Albuquerque; also in permitting the plaintiff to testify as to the custom of the people in and around Albuquerque in allowing their stock to run at large, and that this custom was known to the agents of the company; all of which testimony, as shown in folios 17 to 20, was admitted over the objection of the defendant. *Second.* The court erred in instructing the jury, at the instance of the plaintiff, that the defendant company was liable in the premises if the animal in controversy was killed by gross negligence; there being no evidence whatever in the cause to establish gross negligence, or any negligence whatever, on the part of defendant company. *Third.* The court erred in refusing to give to the jury the third and sixth instructions, and each of them, asked by the defendant. *Fourth.* The court erred in overruling the motion for a new trial. *Fifth.* The verdict is against the law and the evidence, wherefore said appellant prays that the said judgment may be reversed and set aside."

Mr. C. E. GAST, for appellant.

Mr. J. O. PACKER, for appellee.

STALLCUP, C.  Were the facts shown sufficient to warrant the judgment for the value of the mule?  In this state we have a statute fixing an unqualified liability against a railroad company for stock killed by it in the operation of its railroad business, which is as follows: "That every railroad or railway corporation or company, operating any line of railroad or railway, or any branch thereof, within the limits of this state, which shall damage or kill any horse, mare, gelding, filly, jack, jenny or mule, or any cow, heifer, bull, ox, steer or calf, or any

other domestic animal, by running any engine or engines, car or cars, over or against any such animal, shall be liable to the owner of such animal for the damages sustained by such owner by reason thereof." It is urged upon the part of the appellee here that our courts will presume that the laws of New Mexico on this subject are the same as our own. To go that far upon presumption would be against reason and the current of authority. Neither can it be said that this statute makes the liability rest upon the negligence of the railroad company, nor upon the assumption that all killing of stock by railroad companies in the operation of their engines and cars upon their tracks is negligence, and that such negligence is shown by proof of the killing; for there is no such expression in the statute, and such assumption or conclusion therefrom would be against reason, principle and the adjudications of the courts on the subject of negligence in such cases. The case of *Walsh v. Railroad Co.* 8 Nev. 111, was a case for the killing of a cow which had strayed on defendant's railroad track in the western part of the town of Gold Hill, in Storey county, Nevada. In the decision of the case the court say: "But it is not the law that the mere killing of a domestic animal by a railroad train is evidence of negligence. This question has frequently been before the courts, and invariably ruled against the plaintiff, except where the general rule of law is abrogated by positive statute. The fact of killing an animal of value by the company's engines, says Redfield, is not *prima facie* evidence of negligence. 1 Redf. R. R. 465. And it is so ruled in the following cases: *Scott v. Railroad Co.* 4 Jones (N. C.), 432; *Railroad Co. v. Means,* 14 Ind. 30; *Railroad Co. v. Reedy,* 17 Ill. 580; *Railroad Co. v. Patchin,* 16 Ill. 198."

It will be seen by the language used in our statute creating this liability that it is independent of any question or element of negligence; neither can such imposition of the liability be regarded as a penalty, for there is nothing

prohibited or commanded by the statute nor any wrong defined or declared thereby. The statute is novel and does not rest upon any general or commonly accepted principles of law. We see in such a statute that the declared policy of the state is to foster the stock-growing industry, and that the railroad companies, to this extent, shall bear the whole burden of loss occasioned by the conflict or accidental collisions which may occur in carrying on the business of the railroads and the business of stock-growing within the state. Such statute will be confined in its operation to the limits of our own state, and its adoption elsewhere will not be presumed in the absence of proof of the fact. Besides, if there is such a law in New Mexico, it would be a law of the legislature of New Mexico, and courts do not take judicial notice of the statutes of other states — they must be shown like other facts. *Polk v. Butterfield*, 9 Colo. 325; also sec. 387, Code Civil Proc., which provides how the proof may be made. So it follows that we cannot presume the existence of such law in New Mexico, and, in the absence of the proof of the laws of New Mexico, no matter what their provisions may be, they are unavailing to sustain the judgment. Neither can our statute referred to sustain the judgment, for the reason that the wrong or acts constituting the cause of action occurred beyond the limits of this state, so the statute can have no application to this cause of action.

In the consideration of a statute in the case of *Whitford v. Railroad Co.* 23 N. Y. 465, we have the following from the decision of the court in the opinion delivered by Denio, J.: "I have thus far assumed, without a formal statement of the principle, that the statute referred to has no force beyond the limits of the state of New York. This is an elementary doctrine and the contrary was not insisted upon as a general rule in the argument. The laws of New York have no greater operation in respect

to transactions which take place wholly within the terri-
tory of New Granada than the laws of that republic have
in regard to New York transactions. It is no doubt
within the competency of the legislature to declare that
any wrong which may be inflicted upon a citizen of New
York abroad may be redressed here according to the prin-
ciples of our law, if the wrong-doer can be found here, so
as to be subjected to the jurisdiction of our courts; but
as we could not, by any legislation of this kind, put an
end to the liability of the party to the *lex loci*, or divest
the foreign government of its jurisdiction over the case,
such a statute would rarely be just in its operation and
would be more likely to lead to confusion and oppression
than to any beneficial results. * * * This limitation
upon the operation of the laws of a country is quite con-
sistent with the practice which universally prevails, by
which the courts of one country entertain suits in rela-
tion to causes of action which arise in another country,
when the parties come here, so as to be made subject to
their jurisdiction." To the same effect are *Bank v. Earle*,
13 Pet. 519; *Needham v. Railway Co.* 38 Vt. 307, 308.

It is claimed on the part of the appellee that the judg-
ment is sustained by the principles of the common law,
and the charge to the jury given at his request as to
gross negligence; while it is urged in behalf of appellant
that our courts should presume the existence of the com-
mon law in New Mexico, and that, by the principles
thereof, the facts in this case show no right of recovery
against appellant. It is evident that, under the princi-
ples of the common law, the facts shown would not war-
rant the recovery. Under the common law, an owner
turning his domestic animals at large was thereby guilty
of such negligence as would defeat his right to recover
for injury to them, while so at large, except in cases
of gross negligence. The evidence in this case shows
no such negligence. In no view of the case does the

evidence show a liability. *Railway Co. v. Henderson,
ante*, p. 1.

The judgment should be reversed and the case re-
manded for further proceedings.

Macon, C.　I concur in the conclusion reached.

Rising, C.　I concur.

By the Court.　For the reasons assigned in the fore-
going opinion the judgment of the county court is reversed
and the cause remanded.

*Reversed.*