WOLF, PLAINTIFF IN ERROR, v. BURKE, DEFENDANT IN ERROR.

1. LEX LOCI CONTRACTUS.
Ordinarily the validity of a contract is to be determined by the law of the place where made.
2. PRESUMPTION AS TO LAW OF ANOTHER STATE.
In the absence of evidence to the contrary, it will be presumed that the general principles of the common law prevail in another state, but no presumption obtains respecting statutory law.
3. LEX LOCI CONTRACTUS—STATUTE OF FRAUD.
An action may be maintained in this state on a contract made in another, if valid where made, notwithstanding it would be void under our statute of frauds, if made here.
4. LEX REI SITÆ.
Rights and titles to real property are governed by the law of the *situs*, and the law of evidence of the *situs*, respecting such rights and titles, should also govern.

*Error to the District Court of Arapahoe County.*

BY the amended complaint of Thomas J. Burke, C. A. Weed and R. L. Hopkins are made defendants. Plaintiff in error alleging that on September 3, 1885, and for a long time before and after said date, these defendants were partners, doing a general mining and other business under the name and style of the Cœur D'Alene Bed Rock Flume Pool, and were engaged in the construction of a mining ditch or flume, in Idaho Territory, for the purpose of mining the property purchased by them from plaintiff, as hereinafter described; that said R. L. Hopkins was the manager of said work and

had charge and control of the business of said partnership. That on or about the date first mentioned, defendants acting by the said Hopkins, manager, and defendant Burke in person, bought from plaintiff, and plaintiff bargained and sold to defendants, all his right, title and interest in and to certain mining property situated in Idaho territory. It was then and there agreed that plaintiff should by suit obtain title of one Sanders in and to a one-sixth interest in the Lucky Gulch placer claim in Shoshone county, Idaho territory.

It is further alleged that the parties mentioned then and there agreed that defendants would pay plaintiff for all of said property $20,000, as follows :—For Sanders' title, when the same should be obtained by plaintiff, $1,154.18, together with all expenses necessarily incurred by plaintiff in obtaining such title, and for title then in plaintiff; the balance, viz., $18,845.82, in payments as follows : $1,200 cash in hand which was then and there paid, and $17,645.82 on or before the 31st day of December, 1885; or in payments as follows : $5,881.94 on or before November 2d, $5,881.94 on or before December 1st, 1885, and the balance on or before December 31st, following. Plaintiff agreed to make a deed for his interest in said property to defendant Burke, and place the same in Bank at Murray, Idaho, to be delivered to defendant Burke, or to defendants, upon their making the deferred payments as above specified.

In pursuance of said agreement, plaintiff alleges that he then and there executed a deed as required by said agreement, and delivered the same to the Bank of Murray, for said defendants, or for said Burke, and on November 12, 1885, the first deferred payment being then overdue and unpaid to plaintiff, defendants and defendant Burke, represented to plaintiff that they were not prepared to make the payment in full, but would pay plaintiff $550 thereon, and for the remaining $5,331.94 they would give their note at thirty days after date, upon condition that plaintiff would extend time of all of the subsequent payments thirty days, which proposition plaintiff accepted. Thereupon said Burke gave plain-

tiff his check for $250 as a part of the first payment, which is all of the said $550 which was ever paid by said defendant. That said Hopkins promised plaintiff that the balance, $300, should be paid plaintiff in a few days.

In pursuance of said ageement, defendants acting by said Hopkins, manager, he being thereunto duly authorized by said Burke acting in person, made and delivered to plaintiff their promissory note, as follows:

"$5,331.94          MURRAY, Idaho, November 12, 1885.

" Thirty (30) days after date we promise to pay to the order of H. B. Wolf, five thousand three hundred thirty-one and $\frac{94}{100}$ dollars, at Bank of Murray, Murray, Idaho, value received, with interest before and after maturity at the rate of    per cent per annum until paid.

                    " CŒUR D'ALENE BED ROCK FLUME POOL,
                              " R. L. HOPKINS, Manager."


Thereupon such agreement for extension of time for payment of balance, and receipt for amount paid, were entered into, as follows:

                              " Dated Sept. 3, 1885.

" H. E. WOLF to THOMAS J. BURKE.

" The enclosed deed will be delivered to Thomas J. Burke, or order, upon the payment by said Burke, or his attorney to H. E. Wolf, or to his order, at the Bank of Murray, Idaho, of the sum of $17,645.84 at any time on or before the 31st day of December, A. D. 1885, or in payments as follows, to-wit:—$5,881.94 on or before November 2, 1885, $5,881.94 on or before December 1, 1885, $5,881.94 on or before the 31st day of December, A. D. 1885; said deed to be deposited in escrow in Bank of Murray, Idaho, subject to above conditions,

" Witness my hand and seal this 3d day of September, 1885.

                              " H. E. WOLF. [SEAL]
" Witness; W. B. HEYBURN."

" Received on account of this escrow contract, $5,881.94,

being first payment due thereon, and I hereby extend the time when each subsequent payment is due, thirty days from the date in said contract specified.     H. E. WOLF."

which said last mentioned paper was deposited in the Bank of Murray, Idaho.

It was further alleged that in pursuance of this agreement plaintiff brought suit against Sanders for his interest in said placer claim, and, as the result of said suit, obtained title thereto, to himself, for the benefit of said defendants, as per their agreement. Plaintiff alleges that in bringing such suit and obtaining such title he necessarily incurred and paid out the sum of $124.10.

It is further alleged that no part of said note and no part of the deferred payments have been made, and same are wholly unpaid and due plaintiff, together with interest thereon; that the deed from plaintiff has been, since the same was made, in the Bank of Murray, and still remains in said bank in accordance with the agreement between plaintiff and defendants. Plaintiff demands judgment for the amount of said note and deferred payments, with interest upon the same.

The defendant Burke, for answer to the amended complaint, denies generally and specifically each allegation therein contained. Upon these issues the cause was tried to a jury, the other defendants not having been served and not appearing. The trial resulted in a verdict and judgment for the defendant in error. Plaintiff in error brings the cause to this court for review.

Messrs. TELLER & ORAHOOD and Mr. C. M. KENDALL, for plaintiff in error.

Messrs. WOLCOTT & VAILE, for defendant in error.

CHIEF JUSTICE HAYT delivered the opinion of the court.

The district court was of the opinion that the contract was

in contravention of the statute of frauds, and void. If we are to assume that the contract is void in consequence of not being in writing, it must be so by reason of the laws of the territory of Idaho. The contract was made, and is to be performed in that territory, and the property to be affected by its terms is there situate. By well settled principles, the validity of the contract under these circumstances must be determined by the law of Idaho. It was a valid contract at common law, and no evidence was introduced to show that it was not valid under the laws of the territory of Idaho. No presumption should therefore have been indulged in against the validity of the contract by reason of any statute of this state. This was expressly decided in the case of the *A. T. & S. F. R. R. v. Betts*, 10 Colo. 437, and the court cited with approval, *Whitford v. Railroad Co.*, 23 N. Y. 465, in which case the court says:

" Where the condition of the law of another state becomes material, and no evidence has been offered concerning it, our courts will presume that the general principles of the common law, which we always consider to be consonant to reason and natural justice, prevail there. But no such presumption obtains respecting the positive statute law of the state. There is generally no probability, in point of fact, and there is never any presumption of law that other states or countries have established, precisely or substantially, the same arbitrary rules which the domestic legislature has seen fit to enact."

As this doctrine is now well settled and the contrary has only been incidentally insisted upon in this court, we shall consider the same as the accepted law of this jurisdiction.

It is contended by the defendants that the 8th section of the statute of frauds of this state does no more than establish a rule of evidence, that under it parol evidence of a written agreement, or of one that should be in writing, must be excluded, but that the contract itself does not fall under the condemnation of the statute, so as to render it void. It is stated that the laws of Idaho cannot affect the rules of evidence in force in this state, and cases are cited in support of

this proposition. The statutes upon which such decisions are based are dissimilar, however, from the 8th section of the statute of frauds of this state. They are mainly couched in the language of the 4th section of the English statute of frauds, which reads,

"No action shall be brought upon any agreement which is not to be performed within the year," etc.

It has been held that the words "No action shall be brought" of this statute refer to the remedy, and that the writing is required only for the purposes of evidence. The leading case upon this statute is *Leroux v. Brown*, 74 Eng. Com. Law. Rep. 800. The case was decided after an exhaustive discussion participated in by some of the most eminent barristers of England. The opinion is an instructive one, the point decided being that an oral agreement made in France and valid there cannot be enforced in England, if within the 4th section of the English statute of frauds. The decision is based, however, entirely upon the language of the 4th section. The words "No action shall be brought" were held to apply to the remedy and not to the rights and merits of the contract.

And the judges drew a distinction in this respect between the 4th and 17th sections of the English statute, and said that a suit might be maintained on a contract void under the latter, for the reason that it does not prohibit the courts from entertaining jurisdiction, although providing with reference to contracts falling within the terms of this section that "No contract shall be allowed to be good." There is no material distinction between the 8th section of our act and the 17th section of the English act. The one providing as it does that the contract shall be void, and the other that it shall not be good. It will thus be seen that the case of *Leroux v. Brown* is against the position taken by appellees in this cause. The case of *Downer v. Chesebrough*, 36 Conn. 39, is relied upon. The case is quite dissimilar from the case at bar in two essential particulars, to wit:

1st. It arose under a statute providing that no action should be brought.

2d. It related to personal property only.

In this case it was held in a suit brought in Connecticut, against the indorser upon a promissory note in blank, that parol evidence of a special agreement, at variance with that implied by law, would be received.   By the law of the state of New York, where the note was made, indorsed and made payable, such evidence was not receivable.   The opinion admits that the decisions are not uniform and rests its conclusion largely upon the case of *Leroux v. Brown, supra,* and quotes from page 827 of Judge Story's work on the Conflict of Laws.   We have already shown that the English case is not in point, it being predicated upon a statute dissimilar from ours.   Now if we turn to section 630 of Judge Story's work we will find this language.:

Section 630 b. " There are certain rules of evidence which may be affirmed to be generally, if not universally recognized. Thus, in relation to immovable property, inasmuch as the rights and titles thereto are generally admitted to be governed by the law of the *situs,* and as suits and controversies touching the same *ex directo,* properly belong to the forum of the *situs,* and not elsewhere, it would seem a just and natural, if not an irresistible, conclusion, that the law of evidence of the *situs,* touching such rights, titles, suits and controversies, must and ought exclusively to govern in all such cases."

In section 631 the author applies the doctrine of the text to the validity of contracts under the statute of frauds. .. The construction given the English statute in *Leroux v. Brown* has not been universally accepted.   As we have seen, the rights and titles to real property are governed by the law of the *situs,* and there is strong reason, supported by good authority, for saying that the law of evidence of the *situs,* respecting such rights and titles, should also govern.   *Tulloch v. Hartley,* 20 Eng. Chan. Rep. 113.   Story's Con. of Laws, *supra.*

Our statutes being dissimilar, a further review of decisions

upon statutes like the 4th section of the English act would be unprofitable. Our statute reads as follows:

"Every contract for the leasing for a longer period than one year, or for the sale of any lands or any interest in lands, shall be void unless the contract, or some note or memorandum thereof, expressing the consideration, be in writing, and be subscribed by the party by whom the lease or sale is to be made." Gen. Statutes 1883, sec. 1517.

Of this statute it is to be observed that it is unlike the English statute in that it does not prohibit the bringing of an action in cases falling within its provisions, but declares that the contract itself shall be void in such cases.

In addition to the text quoted from Judge Story, we have direct authority to the effect that such a statute does not affect the rules of evidence governing contracts like the one now under consideration. The case of *Houghtaling v. Ball* is directly in point. It was before the supreme court upon two occasions. The first opinion is reported in 19 Mo. 84, and the last in 20 Mo. 563, when the court held that a contract for the sale and delivery of goods, valid in the state where made, will be enforced in the state of Missouri, unaffected by the statute of frauds.

The court without determining whether or not, if the statute of Missouri were the same as the 4th section of the English statute, it would feel bound to follow *Leroux v. Brown*, *supra*, pointed out the distinction between the two statutes. And inasmuch as the Missouri statute did not provide that no action should be brought, but declared the contract itself void, it was held not to apply, and that the contract might be enforced in the Missouri courts. See also *Yates v. Borough*, 56 Pa., p. 21; Am. Law Reg. (N. S.), vol. 1, notes, pages 15 and 16.

The right of the plaintiff to maintain the present action depends largely upon the question of Hopkins' agency. The evidence upon this point is very conflicting. The entire trial in the court below proceeded upon the assumption that the 8th section of the statute of frauds of Colorado controlled.

This was error for which the judgment of the district court must be reversed. This error, without doubt, largely influenced the determination of the question of agency. The judgment is reversed and the cause remanded.

*Reversed.*