## WELLS v. SCHUSTER–HAX NATIONAL BANK.

1. COMMON LAW—PRESUMPTION.

At common law an assignee for the benefit of creditors took only the interest in the property which the debtor had at the time of the assignment, and, hence, could not maintain an action to set aside a previous fraudulent conveyance by the assignor. In the absence of proof to the contrary, it is to be presumed that this rule still prevails in a sister state.

2. MERGER.

It seems that a merger takes place only where an inferior security or indebtedness passes into one of a superior degree.

3. SAME—JUDGMENT—CREDITOR'S BILL.

A judgment may support an action in the nature of a creditor's bill to set aside a fraudulent conveyance, notwithstanding since its rendi-

tion suit may have been brought thereon and a partial satisfaction obtained in another state.

4. FRAUD—VOLUNTARY CONVEYANCES.

Under our statute the question of fraudulent intent is one of fact and not of law, and no conveyance is to be adjudged fraudulent solely upon the ground that it was not founded upon a valuable consideration.

5. SAME.

If the result of a transaction was a fraud upon creditors, the law supplies the intention or proceeds regardless of the intention.

*Appeal from the District Court of Arapahoe County.*

Messrs. WELLS, TAYLOR & TAYLOR, for appellant.

Messrs. WOLCOTT & VAILE, for appellee.

MR. JUSTICE CAMPBELL delivered the opinion of the court.

The complaint in this action is in the nature of a creditor's bill to set aside an alleged fraudulent conveyance, and subject the property so conveyed to the satisfaction of the judgment. In August, 1891, a judgment was obtained in the district court of Arapahoe county, Colorado, by the Schuster-Hax National Bank against Isaac T. Hosea for about $8,000, and the property in controversy here was then impressed with the lien thereof.

The present action to subject this property to the satisfaction of that judgment was brought in March, 1892, and the cause of action was based upon the prior judgment in the same court. While the present action was pending, and in July, 1892, suit upon the judgment rendered in 1891 in Colorado was brought in the circuit court of Buchanan county, Missouri, and a money judgment there obtained against Hosea, upon which payments have been made, leaving, however, a balance due at the time the present action was begun. The obtaining of this second judgment is set up as a defense by a supplemental answer filed by the defendant in September, 1893.

Upon issues joined the trial court made findings in favor

of the plaintiff, and ordered the property sold and applied upon the judgment. The propositions upon which the appellant here (defendant below) relies for reversal are, *first*, plaintiff showed no title to assail the conveyance in question; *second*, the district court erred in sustaining the demurrer to the defendant's supplemental answer; *third*, the evidence fails to show such a case as entitles the plaintiff to the relief prayed for.

As to the first proposition: Before this action was begun, Hosea, the judgment debtor, in conformity with the laws of Missouri (in which state both he and plaintiff resided), conveyed all of his estate for the benefit of his creditors. The assignee accepted the trust and was proceeding therewith. This being true, it is argued that only the assignee could institute this action to assail the conveyance now brought in question, even if the same was impeachable. To this are cited *Voorhees v. Carpenter*, 127 Ind. 300; Freeman on Executions, sec. 431, note 5.

At the common law an assignee under an assignment for the benefit of creditors took only that interest in the property which the debtor had at the time of the assignment. From this it follows that property previously conveyed, though in fraud of creditors, did not pass, and the creditors, not the assignee, were the ones to sue to set it aside. 1 Am. & Eng. Ency. of Law, 854; *Heinrichs v. Woods*, 7 Mo. App. 236; *Roan v. Winn*, 93 Mo. 503.

Though this equitable interest may be sold under execution sued out under the first judgment, this does not preclude the creditor from first getting an adjudication as to the debtor's interest therein. *O'Connell v. Taney*, 16 Colo. 353.

The appellant, however, contends that by sections 14 and 18, pages 46 and 47, Session Laws of 1885 (1 Mills' Ann. Stats., secs. 182, 186), in this state, the assignee, and not the creditor, has the sole right to demand and sue for the property fraudulently conveyed before the date of the assignment, and we are told that this court, in the absence of proof to the contrary, will presume that the law of Missouri in this par-

ticular is the same as our own. In *Wolf v. Burke*, 18 Colo.
264, this court has expressly held to the contrary, and if presumptions are to govern, it would be that the common law
still prevails in Missouri. If it does, the creditor in this case
would have the right to institute this action. We are not
called upon to determine what the assignee's rights are by
the law of this state, for under the decisions of the courts of
review of Missouri, *supra*, as well as the presumption which
this court must indulge, the creditor, not the assignee, has
the right to bring this action. *Kermott v. Ayer*, 11 Mich. 181;
*Ellis v. Maxson*, 19 Mich. 186.

*Second :* The appellant contends that when the creditor
recovered the judgment in the Missouri court upon the prior
Colorado judgment, the latter became merged in the former,
and thereafter was extinguished for all purposes whatever.
It has been expressly held in *Gould v. Hayden*, 63 Ind. 443,
that a judgment recovered in a court of one state upon a
judgment previously rendered in a court of a sister state
merges the latter. Freeman on Judgments (4th ed.), sec. 216,
approves this view, and to the same effect is the text in 15
Am. & Eng. Ency. of Law, 336. The contrary doctrine is
announced in other authorities, and proceeds upon the theory
originally given for the rule that merger takes place only
where a security, or indebtedness, of an inferior, passes into
one of a superior degree. *Weeks v. Pearson*, 5 N. H. 324;
*Mumford v. Stocker*, 1 Cowen (N. Y.), 178; *Bates v. Lyons*, 7
Paige's Chan. 85; 2 Black on Judgments, sec. 864; *Hogg v.
Charlton*, 25 Pa. St. 200; *McLean v. McLean*, 90 N. C. 530;
*Andrews v. Smith*, 9 Wendell, 54.

It is said, however, that the later authorities predicate this
doctrine of merger upon the ground that the allowance of a
new suit is superfluous and a vexatious encouragement to
litigation injurious to the defendant, and of no benefit to the
plaintiff. Without further pursuing the inquiry, we content
ourselves by saying that it seems more in consonance with
principle to base the doctrine upon the reason originally
given for its establishment, and that so long as the indebted-

ness is unsatisfied, successive suits in different states may be prosecuted. But whatever be the correct general rule, there are numerous exceptions to, and qualifications of, it, and it has been said that it should not be allowed to prevail to accomplish manifest injustice. Freeman on Judgments, sec. 223, et seq.; Lawton v. Perry, 40 S. C. 255, 274; 2 Black on Judgments, 677.

Neither does the doctrine apply unless the identical cause of action has passed into judgment, and the object is the same in both actions, in a suit between the same parties or their privies. 2 Black on Judgments, 674; 1 Freeman on Judgments, sec. 216. See, also, Barnes v. Beighly, 9 Colo. 475–481.

In the Missouri case the action was between the judgment creditor and the judgment debtor. The subject-matter was the Colorado judgment; the cause of action was the failure and refusal of the debtor to pay it; the object of the action was to recover a money judgment apparently that it might prorate with the claims of other creditors under the assignment. In the case at bar the suit is between the judgment creditor and the grantee of the debtor; the subject-matter is the same as in the Missouri case; but the cause of action here is the fraud of the judgment debtor in conveying the property, and the concurring legal fraud of the grantee in withdrawing it from the lien of the judgment; the object of the action is not to recover another money judgment,—indeed such a general judgment could not be rendered in this character of action,—but merely to subject the property fraudulently conveyed to the satisfaction of the indebtedness represented by the former judgment. Barnes v. Beighly, supra.

Under all the authorities, so far as we have examined, and under the facts of this case, the prior Colorado judgment may constitute the evidence and the basis to support the present action. See, further, in support of the conclusions reached upon this branch of the case: Mulock v. Wilson, 19 Colo. 296; Arnett v. Arnett, 1 Colo. App. 34; Muncie Nat. Bank v. Brown, 112 Ind. 474; Second Nat. Bank v. Townsend,

*Assignee*, 114 Ind. 534; *Jackson v. Shaffer*, 11 Johnson, *513;
*Carter v. Colman*, 12 Ired. (N. C.) 274; *Nickerson v. Stage Co.*, 10 Cal. 520; Story on Conflict of Laws (Bigelow's 8th ed.), sec. 599 *a*.

The last proposition is that the proof was insufficient to make out the alleged fraud.   That the conveyance was voluntary and that Hosea was, at the time, largely indebted to plaintiff, are conceded facts.   The deed was made during the first part of January, 1891, and was intended as a settlement by the father for his daughter.   He was engaged, with a partner by the name of Scholtz, in the wholesale hardware business in the city of St. Joseph, and his interest therein comprised about all the property he owned.   For two or three years previous to the conveyance he had not given his personal attention thereto, but devoted his time and energies to the management of a large estate of which he was administrator.   About three months after this conveyance, learning of the financial embarrassment of his partner, and realizing, also, that they were unable then to pay their firm debts as they matured, Hosea bought out his partner's interests, giving him $300 therefor, subject to the partnership liability, intending to continue the business in his own name and pay the liabilities.   Three days after this purchase, owing to his illness and probably to other causes, Hosea made an assignment for the benefit of his creditors.   According to his own statement, his financial condition then was the same as on the day he made the conveyance to his daughter.

The nominal assets of the partnership, both at the time of the conveyance and of the assignment, were in excess of the liabilities.   The failure was not due to an accident, or a calamity, or to causes other than those so frequently occurring as incident to business life.   Whether due to his own improvidence, to his inattention to his own affairs, or mismanagement of his partner, or to the fluctuations in value of the property, or inability to realize upon outstanding or worthless accounts, does not definitely appear, but probably all of these causes contributed to the insolvency.   Hosea says

in his own testimony that when he bought out his partner the business was in such a condition that the debts of the firm could not be paid. He also testifies that the partnership did not have funds in hand to meet its maturing obligations, and that the results of the assignment would have been the same in January as they were proven to be in the following April.

Upon the evidence in this case equally intelligent and honest men might reasonably differ in their conclusion. It is strongly contended that had not the assignment been made, and had the property been disposed of in the ordinary course of trade by the partnership firm, all of the debts would have been paid, and a balance realized. Under the facts of this case, and, moreover, generally, this is not the true test of solvency. Here $2,500 of the firm's money were taken by Hosea, land was purchased therewith, and the same conveyed as a settlement upon his daughter. A debtor has no right to give away a portion of his property and leave an insufficient amount for his creditors. They should not be called upon to suffer from the hazards of his speculations, or from his financial arrangements, or improvident conduct of business. He must, before making such a settlement, make adequate provision for his existing creditors, so that in the ordinary course prescribed by law for the collection of debts these debts will be paid. Bump on Fraudulent Conveyances (Gray's 4th ed.), sec. 257, *et seq.*

In the absence of a statute, a voluntary conveyance is considered as *prima facie* evidence of intent to delay, hinder or defraud creditors. Bump on Fraudulent Conveyances, sec. 247, and cases cited.

Under our statute, however (Gen. Stats. '83, sec. 1529; Mills' Ann. Stats., sec. 2033), the intent is a question of fact and not of law, and no conveyance is to be adjudged fraudulent solely upon the ground that it was not founded upon a valuable consideration. *Thomas v. Mackey*, 3 Colo. 390; *Burdsall v. Waggoner*, 4 Colo. 261; *Burr v. Clement*, 9 Colo. 1.

It may be, and doubtless is, true that no corrupt motive

prompted Hosea in making the settlement, nor was there any participation in the wrongful intent, if any, upon the part of the grantee. But where, as here, the conveyance is in the nature of a gift, it is not necessary to show participation in the fraud by the grantee. *Wilcoxen v. Morgan*, 2 Colo. 473; *Mulock v. Wilson*, *supra*; *Gwynn v. Butler*, 17 Colo. 114.

Prior indebtedness, it is also true, is not conclusive evidence of fraud, but only presumptive evidence, and, as we have seen, in our state fraud is always a question of fact in a case like this. See, also, *Lloyd v. Fulton*, 91 U. S. 479.

But it is not alone Hosea's previous indebtedness, and the voluntary character of the conveyance, that constitute the fraud in the case at bar. These facts, together with the necessary result in delaying creditors, make it a legal fraud, though no specific intent to defraud existed. In such a case the question of intention is a deduction from the facts proved. *Knapp et al. v. Day*, 4 Colo. App. 21.

"The question of intention is only a conclusion or deduction from the facts as disclosed. If the result of the transaction was fraud, the law supplies the intention or proceeds regardless of the intention."

While the value of the property settled upon the defendant in this case is much less in proportion to the nominal assets of her father than was the amount which Gwynn conveyed to his wife in proportion to his assets, yet the principle announced in the case of *Gwynn v. Butler*, *supra*, we think is decisive of this. There it was said:

"But a voluntary conveyance, that is, a conveyance not supported by a valuable consideration, by a husband to his wife which is intended *or which tends to defraud existing creditors* of the husband cannot be upheld against such creditors. If the husband be insolvent at the time of making such conveyance, or if, by reason of such conveyance he is rendered unable to pay his existing debts, the wife's title will be deemed fraudulent, and the property thus conveyed may be subjected to the payment of such debts."

There is enough legal evidence to support the findings of

the trial court; it is not manifestly against the weight of the evidence, and while it may be a matter of regret that defendant must lose this land, yet it is in accordance with the well settled rule of this court that we should not reverse a judgment merely because, had we been the triers of the facts, a different conclusion might have been reached.

The judgment is affirmed.

*Affirmed.*