[No. 2188.]

THE WESTERN NATIONAL BANK OF PUEBLO v. THE STATE BANK OF ROCKY FORD ET AL.

**Gambling Contracts—Bank Certificate of Deposit—Indorsement.**
    Under section 1344, Mills' Ann. Stats., an indorsement and transfer of a bank certificate of deposit in payment of money lost at gaming is absolutely void and vests no title to the certificate even in an innocent purchaser.

*Appeal from the District Court of Pueblo County.*

Mr. WILLIAM B. VATES, for appellant.

Mr. JOSEPH DYE, for appellee Lou Turner.

WILSON, P. J.

The following facts were practically undisputed. Mrs. Lou Turner, one of appellees, gave to her husband, R. J. Turner, $360 of her own money to deposit for her in the State Bank of Rocky Ford, one of appellees. Turner deposited it as requested, but took a certificate of deposit therefor in his own name, which he delivered to his wife, and which she placed in her trunk. She did not notice that the certificate, which was payable on demand, was in the name of her husband. Shortly afterwards, without her knowl-

edge or consent, Turner took the certificate of deposit from the trunk, went to Pueblo, and gambled it off at the game of faro in the gambling house of Gray & Company.  Mrs. Turner, learning the fact on the next day, went to Pueblo and demanded from Gray & Company the return of the certificate, which was refused.  She and her husband thereupon notified the Rocky Ford bank not to pay the certificate if presented.  Within a few days thereafter, Gray & Company sold the certificate to the appellant bank, receiving the full value thereof.  It appears that at the time of this purchase, the appellant bank had no knowledge or notice of any infirmity which attached to the assignment of the certificate.  In the regular course of business, the certificate was presented to the Rocky Ford bank, and payment was by it refused.  It then commenced this action in the nature of an interpleader, making all of the parties mentioned defendants, and praying that they be required to come into court and adjudicate their claims to the certificate, payment of which it professed its readiness to make at any time to whomsoever was determined to be the lawful owner.  The decree of the court was that the assignment having been for a gambling consideration, was void and passed no title, and that the certificate was the property of Mrs. Turner, and from this an appeal was taken by the appellant purchaser of the certificate.

Our gambling statute, after providing that all contracts, promises, agreements, conveyances, securities and notes made, executed, etc., where the whole or any part of the consideration shall be for money or property won by gaming, or by playing at cards, or by any gambling device or game of chance, etc., shall be utterly void and of no effect, proceeds as follows:  "No assignment of any bill, bond, note or other evidence of indebtedness, where the whole or

any part of the consideration for such assignment shall arise out of any gaming transaction, shall in any manner offset the defense of the person or persons making, entering into, executing or giving such instrument so assigned, *or the remedies of any person interested therein.*"—Gen Stats., sec. 850; Mills' Ann. Stats., sec. 1344.

This statute has been in force for many years, and was taken literally from the statute of Illinois.— Hurd, Revised Statutes of Illnois, chap. 38, secs. 131, 136. Both before and subsequent to its adoption in Colorado, it has been interpreted by the supreme court of Illinois.—*Williams v. Judy,* 3 Gilman, 284; *Chapin et al. v. Dake,* 57 Ill. 298.

In each case it was held that a contract tainted with a gambling consideration was absolutely null and void, even in the hands of an innocent purchaser for value. The Chapin case was almost precisely similar to the one at bar. There genuine bank drafts had been lost at gambling, and the court held that the endorsement or assignment of the drafts was void, and did not serve to transfer the title in them. It held in effect that the endorsement of the drafts was a contract or agreement between the parties. The same has been held by this court in a very recent case, the opinion in which was handed down at this term.— *D. Sullivan et al. v. German National Bank of Denver, Joshua H. Wilbraham et al., ante,* 99.

The consideration of the contract of endorsement in this case coming within the prohibition of the statute, it was null and void, and through it therefore the appellant bank secured no title. No more effect could be given to it, as was said in the Dake case, than to a forged endorsement. The contract of assignment being void by express statute, it was stricken with nullity at its birth, and could gather no

vitality by circulation.—*Boughner v. Meyer*, 5 Colo. 73; Daniel on Negotiable Instruments, § 197.

The views which we have expressed have already been announced both by this court and by the supreme court.—*Boughner v. Meyer*, *supra*; *Bank v. McClelland*, 9 Colo. 611; *Ayer et al. v. Younker*, 10. Colo. App. 27.

In the Boughner case Chief Justice Thatcher said: "The provisions of this section are very broad and sweeping. Even in the hands of *bona fide* purchasers, negotiable paper founded in whole or in part upon a gambling or gaming consideration, within the meaning of this section, is utterly void."

If a negotiable instrument is void because of a gambling consideration, so must also be an assignment or endorsement, because it is a contract indisputably, and hence comes within the express language of the statute.

It is possibly true that this sweeping statute may under certain circumstances work hardship in the commercial world, but courts are powerless to relieve. The remedy, if any is desirable, rests with the legislature alone. . Of course where innocent purchasers are involved, the effect of the statute should not be extended to cases not fairly within its provisions, but where the case, like this, comes squarely within the terms of the statute, there is but one course for the court to pursue.

The judgment was right and will be affirmed.

*Affirmed.*