Wilson, P. J.
About September 5, 1893, defendant Wilbraham received from The German National Bank of Denver, one of defendants, two time certificates of deposit, each for the sum of $1,000.00, bearing six per cent, interest and payable, the one numbered 102755, on March 5,1894, and the other, numbered 102756, on September 5, 1894. They were in the usual form, each specifying that Wilbraham had deposited in the bank $1,000.00, payable to the order of himself, in current funds, on the return of the certificate properly endorsed by him at the time specified for payment. About March 10 following Wilbraham, at the city of San Antonio in Texas, endorsed and delivered both of said certificates to one W. S. Allen who on the same day deposited them for collection for his account with plaintiffs, D. Sullivan & Company, hankers in said city of San Antonio. Upon transmission to Denver the certificate No. 102755 which was then past due was promptly paid upon presentation to the payor, The German National Bank, but payment of the other certificate was refused because it had not then matured. Upon receipt of payment Sullivan & Company paid to Allen the amount received on collection of the certificate which had been paid and returned to him the other, payment of which had been refused. Shortly thereafter, and before its maturity, Sullivan & Company purchased from Allen the remaining certificate, payment of which had been refused. When this certificate matured, the payor, The German National Bank, had become ■ insolvent, and its business was then in the hands of a receiver. Thereupon, on June 10, 1895, the company instituted this suit to re *101 cover on the certificate which it had purchased, making the German National bank, the payor, a defendant, and also Wilbraham and Allen, the endorsers. Defendant Wilbraham answered, setting up as a defense that the endorsement and assignment by him of the certificate sued upon were void because of the gaming statutes of Colorado. — Gen. Stats., sec. 850; Mills’ Ann. Stats., sec. 1344. It was specifically alleged in this answer “that on or about March 10, 1894, the defendant was compelled by duress, intimidation and superior force, and as a part of one and the same transaction, to sign his name upon the back of each of said two certificates, and that thereupon the said certificates were wrongfully taken from the defendant, as part of one and the same transaction by the said unknown persons by duress, intimidation and superior force. That at the time said certificates were so signed and wrongfully taken from the defendant, the defendant was by duress, intimidation and superior force compelled to take part in some gambling transaction, the particular name of which is unknown to the defendant, but which this defendant now believes is usually called ‘three card monte’, and that said certificates were so signed and taken from the defendant solely in consideration of money won by gambling, or playing at cards, or some gambling device or game of chance. * . * * That the defendant received no consideration whatever for said certificates, or either of them, or for writing his name upon the back of the same, and that the said endorsement and delivery of said certificates were absolutely and wholly without consideration. ’ ’
Defendant also, by way of counterclaim and cross-complaint, set up the facts with reference to the endorsement, and prayed judgment against the German National bank and Sullivan & 'Co.- for the sum of $1,000.00 represented by the first certificate, which *102 had been paid as we have stated, and which he claimed had been unlawfully and wrongfully paid. He also prayed judgment that as to the certificate-upon which this suit was brought by plaintiffs, it be decreed that the transfer and endorsement were void, and that Sullivan & Co. transfer all of their alleged right, title and interest in it and deliver the same to the said defendant. Judgment was in favor of defendant Wilbraham to the full extent prayed for by him.
It is unnecessary to set forth in detail the circumstances attending the endorsement and transfer of the certificates by Wilbraham, and the so-called g'ambling transaction in which they were involved, all of which were fully testified to by this defendant. It is conceded that at the time of the payment by the German National bank of the certificate No. 102755, it had no notice whatever of any infirmity or vice affecting the endorsement by Wilbraham, and that Sullivan & Co. had no such notice at the time it purchased in the usual course of trade, the certificate upon which this suit is based. Indeed, it does not appear that either of the banks ever had any such notice until it was given by the filing of defendant Wilbraham’s answer in this suit, in November, 1898.
That a bank certificate of deposit is a negotiable instrument cannot be questioned. — 2 Daniel on Negotiable Instruments, 4th ed., § 1703; Zang v. Wyant, 25 Colo. 551. It is also settled by undisputed authority that an endorsement of a negotiable instrument is not only a transfer of the instrument, but that it is an original, independent contract, equivalent to the drawing of a new bill on the maker and drawer, or acceptor, as the case may be, of the instrument that is endorsed. By this independent contract the endorser is regarded as undertaking to pay at the place where his endorsement is made in the event of dishonor and *103 due notice, and in the making of it is not considered as merely adopting the date, place and time of the hill or note which he endorses. — Tiedeman on Commercial Paper, § 256; 1 Daniel on Negotiable Instruments, 4th ed., § 899. This doctrine has now become elementary in commercial law, and the authorities in support of it are almost without exception. This being true, it necessarily follows, and is equally well settled by the almost universal current of authority, that in determining the liabilities and obligations growing out of this contract of endorsement, the endorser is bound by the law of the place where he made the endorsement, even though the instrument, bill or note which he endorsed was expressly payable elsewhere. — 1 Daniel, Negotiable Instruments, supra; Brook, Oliphant & Co. v. Vannest, 58 N. J. Law, 163; Musson v. Lake, 45 U. S. 967.
Assuming, therefore, but not conceding, that the facts in this case are sufficie'iit to bring Wilbraham’s contract of endorsement within the inhibition of the Colorado gaming statute, it is nevertheless true that in determining the effect and validity of the endorsement, the law of Texas must control. It has been frequently held in this jurisdiction that the statutes of this state have no extraterritorial force or effect — that they have no application to transactions occurring beyond the limits of the state. — Railroad Co. v. Betts, 10 Colo. 437; Wolf v. Burke, 18 Colo. 264; Wells v. Bank, 23 Colo. 534. No statute of Texas was shown similar to that of Colorado, or which would invalidate the endorsement of a negotiable instrument under the circumstances of this case, or prevent a recovery against the endorser. Under such circumstances, it is held that “where the condition of the law of another state becomes material, and no evidence has been offered concerning it, our courts will presume that the gen *104 eral principles of the common law which we always consider to be consonant with • reason and natural justice prevailed there, but no such presumption obtains respecting the statute law of a state. There is generally no probability, in point of fact, and there is never any presumption of law, that other states or countries have established, precisely or substantially, the same arbitrary rules which the domestic legislature has seen fit to enact.” — Railroad Co. v. Betts, supra; Wolf v. Burke, supra. It is to be presumed, however, that the general principles of the common law as adopted in this state, prevail there, and hence it must be conceded that under the law of Texas the endorsement of the certificates in question was not affected nor invalidated by any of the facts alleged. It is a familiar principle of the common law that the purchaser or holder of a negotiable instrument, who has taken it bona fide, for a valuable consideration, in the ordinary course of business, when it was not overdue, without notice of its dishonor and without notice of facts which impeach its validity as between antecedent parties, has a title unaffected by those facts, and may recover on the instrument, although it may be without any legal validity as between the antecedent parties. No citation of authorities is needed to this proposition.
In addition to the indulgence of this legal presumption, the courts of a state in cases where the laws of another state are involved, may and should take notice of the decisions of the highest courts in tlio latter jurisdiction upon the law so involved. In 1890 it was held by the supreme court of Texas that under the law of that state a promissory note, the sole consideration for which was a gambling debt, was not void, but was good and enforceable in the hands of an innocent endorsee for value before maturity- — that such a note, as well as all contracts hav *105 ing a similar consideration, were voidable only as between the parties and also between the maker and endorsee after maturity, or with notice. — Thompson v. Samuels, 14 S. W. 143.
The Colorado gaming statute is exceedingly similar to that of statute 9 Anne, chapter 14, page 1, as cited by appellee, but the common law of England and acts of parliament in aid thereof, obtain as a rule of decision in this state only as they existed prior to the fourth year of James the First, which was long prior to the reign of Anne.- — Gen. Stats., sec. 197; Mills’ Ann. Stats., sec. 4184.
It is urged, however, by counsel that the rule permitting and requiring the law of the place of contract to control in its interpretation and enforcement, is based alone upon comity between states, and that it is not without exception. He insists that no state should or is bound to follow the rule when the law of the foreign state in question would contravene its- own positive laws, institutions or policy, which prohibit such a contract, or when it would prejudice the rightá of its citizens. This exception is undoubtedly' true, and should be considered and. followed in a proper case, but we do not think this such a case.. The principle which lies at the basis of this exception and upon which it is founded, is that the state should not be compelled to adopt the law of a foreign state, when by so doing it would exhibit to the citizens of the state an “example pernicious and detestable,” and detrimental to good morals. — Greenwood v. Curtis, 6 Mass. 358. In short, the general rule as expressed by the more modern authorities is that the law of the foreign state should control and should be enforced unless it is clearly against good morals, or repugnant to -the positive institutions of the state in which enforcement is sought. We are by no means prepared to say that this case, turning as it does upon the endorsement of *106 negotiable paper whereby the rights of innocent purchasers were affected, is such a case. On the contrary, we think under the facts here presented, it would be highly inequitable to follow this exception to the rule. Under the common law as adopted in this state, the contract sought to be enforced was affected with no vice. It was in all respects valid and enforceable.
Especially are we confirmed in these views when it has been held by our own courts that our gaming statute is a harsh one, in derogation of the common law, and should be strictly construed; that its provisions making void a certain class of negotiable paper, should not be extended. — Boughner v. Meyer, 5 Colo. 71; Bank v. McClelland, 9 Colo. 611.
It is the rule in this state in reference to negotiable instruments, the sole consideration of which are confessedly gambling debts and come within the inhibition of the gaming statutes, that in actions thereon by an innocent holder for value before maturity, the courts will submit to the statutory command with extreme reluctance. — Bank v. McClelland, supra. If this were a- case between the original parties to a contract whose consideration came within the prohibition of the statute, or wherein an assignee with notice was seeking to enforce it, our conclusions might be entirely different. Then it might well be claimed that a case was presented coming clearly within the exception to the rule that in suits upon contracts the lex loci must control.
It is recognized everywhere as a settled principle of commercial law except where modified by statute, that the holder or purchaser of a. negotiable instrument who has taken it bona fide for a valuable consideration in the ordinaiy course of business before maturity and without notice of facts which impeach its validity as between antecedent parties, may recover *107 on it although it was originally executed without any consideration at all, or has been subsequently released or paid, and even though it was originally obtained by fraud, theft or robbery.—1 Daniel, Neg. Inst., § 769a. If this well-settled and universally approved doctrine be not offensive or shocking to the moral sense of the community, we cannot see how it should become so under the circumstances of this case to hold that the law of Texas should control, and that plaintiffs be permitted to recover, they being confessedly innocent purchasers for value, the original instrument itself being untainted with invalidity, and the endorsement being genuine. Whatever doubts may be raised as to the legal liability of defendant Wilbraham, there can be no question as to his moral responsibility because of his utter failure to give any notice of his misfortune or to exercise any of even the most ordinary precautions to prevent loss to the innocent by reason thereof. His reluctance to do this because of personal shame and mortification may palliate his wrong, but does not excuse it in law.
There are several other entirely satisfactory reasons in our opinion why the judgment in this case was radically wrong and should be reversed, but the one which we have stated at length being decisive of the entire case, it is not necessary to mention or discuss them. The judgment will be reversed.

Reversed.