Thomson, J.
Plaintiff in error seeks the reversal of a judgment dissolving an attachment. The suit was brought on the 6th day of May, 1896, upon a judgment recovered by him against the defendant in error, in the district court of Arapahoe county, on the 17th day of May, 1888. The ground for attachment alleged in the affidavit was that the defendant had fraudulently conveyed and assigned his property and effects so as to hinder and delay his creditors. The allegation was traversed by the defendant, and the issue submitted to a jury, whose verdict being for the defendant, the attachment was dissolved.
The plaintiff introduced some documentary evidence, and examined a number of witnesses, including the defendant himself. The latter offered no evidence. At the conclusion of the plaintiff’s case, the defendant asked judgment of non-suit, but. the motion was denied. There was no conflict in the testimony, and the facts upon which the plaintiff predicated his right to an attachment were not in dispute.
Those facts we shall proceed to examine.
On the 8th day of January, 1892, the defendant, being the owner of a farm in Arapahoe county, and certain shares of ditch company stock, which entitled him to water for the irrigation of his land, executed a deed conveying the property to Lucien H. Richardson, as trustee, to secure the payment to the Middlesex Banking Company of Connecticut, of an indebtedness of $2,500, due June 8, 1898, with interest at ten per cent per annum. On the 7th day of September, 1893, the defendant paid $1,000 upon the debt, and payment of the residue was extended to June 1, 1894. In February, 1893, the defendant conveyed the property to John H. Ottama, subject to the trust deed to Richardson, for an expressed consideration of $500. The debt not having been paid when due, according to the extension, the trust deed was foreclosed, and Dell Kearney, the wife of the defendant, became the purchaser. No money was paid upon the pur *466 chase, except the interest then due, and the expenses of foreclosure, amounting in all to $225; but Mrs. Kearney executed to Richardson, as trustee, a deed to the property to secure the payment to the banking company of ¡§1,500, the amount of unpaid principal. Sometime afterwards, Mrs. Kearney sold the property, subject to the .trust deed, for an expressed consideration of $10,500. The first trust deed included forty shares of the capital stock of the Brighton Ditch Company. These, together with the land, were purchased by Mrs. Kearney at the sale, but the trust deed which she made included only eight shares of that stock, the residue, thirty-two shares, being retained by her. The learned counsel of the plaintiff detects an indication of fraud in the payment of ¡§225 at the foreclosure sale, on the supposition that it was the plaintiff’s money, and not that of Mrs. Kearney, which was paid; but the supposition is unwarranted. There was very little evidence on the subject; but what there was, tended to show that it was Mrs. Kearney’s own money, and in the absence of a single word to the contrary, it must be so regarded. Counsel also undertakes to make a point on the retention by her of the thirty-two shares of ditch stock, but we find nothing in that which was calculated to excite suspicion. It was not. the defendant’s title that was foreclosed and sold. He had parted with that sometime before. It was the title of Mr. Ottama which Mrs. Kearney bought. What she should do with the ditch stock, after it became hers, was a matter in which the plaintiff was not concerned, unless her purchase, and the deed to Ottama, were parts of one general scheme to put the property beyond the reach of the defendant’s creditors ; but of such supposed scheme, or of any facts which would tend to show a want of good faith in any of the transactions relating to the property, there was'an entire absence of proof. In this state, in respect to matters of business, a married woman is upon the same footing with a feme sole. She may engage in business, acquire property and dispose of it, independently of her husband, and unbound by any of the restraints or disabilities of coverture. Wells v, *467 Caywood, 3 Colo. 487; Scott v. Mills, 7 Colo. App. 155. Mrs. Kearney had the legal right to buy this property, and to do what she chose with it after she bought it, and if the purchase proved a good speculation, she was fortunate. To give creditors of her husband the right to question the transaction, something more must appear than this record discloses. So far as any dealing in this property was concerned, the reason for attachment, contained in the affidavit, was unsupported.
On the 2d day of November, 1892, the Strong Gold Mining Company executed to the defendant a lease on all of the Strong mining claim, located on Black Diamond Hill in Cripple Creek mining district. The term of the lease was two years, but it contained a contract giving the defendant the privilege of purchasing the claim for $50,000; $10,000 to be paid in fifteen days from the date of the lease, and $40,000 at any time within the two years. The defendant was without funds, and could not make the first payment, and he induced four other parties, in consideration of four fifths of the interest he had acquired, to advance the necessary money; and on the 15th day of November, 1892, he assigned, in writing, to those parties and his wife, Dell Kearney, his entire interest in the lease and option. The American National Bank of Denver, being the owner of a judgment against the defendant, levied upon and sold the one-fifth interest transferred to Mrs. Kearney. She asserted her title against the bank, and, for the purpose of avoiding litigation, the parties compromised their dispute, and, finally, she realized $20,000 for her interest. In view of the evidence in the case, the transactions between Mrs. Kearney and the bank are unimportant. If the transfer by her husband to her was bona fide, and was for a valuable consideration, it does not matter what she did with the property afterwards.
The defendant and Mrs. Kearney were married in Michigan, in the year 1873. She appears to have been 'possessed of some means in her own right, and loaned him $4,000 after their marriage. Shortly afterwards, they removed from *468 Michigan to Colorado, taking np their residence in Denver. In 1885, she bought a tract of land near Denver, and after holding it a short time, sold it, realizing a profit on her purchase of $1,600. This money she loaned to her husband, and also $200 or $250, which, in 1895, she realized on a piano and some furniture belonging to her. All the money he received from her, he borrowed to be used in his business, and promised to repay her, but his enterprises and speculations proving unsuccessful, he found himself unable to do so, and when he procured the lease, by an agreement with her, he turned over to her this one-fifth interest in full satisfaction of all her claims against him. The evidence concerning this transaction discloses nothing to warrant an inference of any intent on the part of the defendant to hinder or delay creditors. A debtor has the right to prefer creditors, and the payment in good faith of one creditor to the exclusion of others, furnishes the latter with no legal ground of complaint. An honest transfer of property in satisfaction of a prior obligation cannot be made the basis of a proceeding in attachment.
But it is said that the $4,000 received by the defendant from his wife, when they were married, became his own property, and that the transaction did not make his wife a creditor, because the law of Michigan relating to the property rights of married women not being in evidence, the presumption would be that the contract was controlled by the common law, which is that the personal property of the wife, reduced by the husband to possession during coverture, becomes his absolutely. We have a few observations to make before looking into this proposition. There was nothing in the record to indicate that the indebtedness of the defendant to his wife, contracted in this state, was not, alone, a full and adequate consideration for the interest he transferred to her. The property leased appears to have been merely a mining prospect. The lease provided for its development by the lessee. Development work might render it valuable, or prove it worthless. What its value might eventually be, would depend *469 upon the result of the work done within it. As a prospect, there was no standard by which its value could be measured; in its condition when the lease was made, that value was conjectural; and, judging from the evidence, we do not believe that any person could have stood upon the ground at the time, and given one satisfactory reason for saying that Mrs. Kearney did not pay its full value, without including the $4,000 hi the consideration. But there was no reduction by the defendant to his own possession of the money paid to him in Michigan, in the manner contemplated by the common law. There was no extinguishment of the rights of Mrs. Kearney in the money. The money was her separate property; it was borrowed from her; it was obtained upon promise of repayment; and although, at law, she might be unable to enforce her claim, an equity would exist in her favor, which would constitute a valid and sufficient consideration for her husband’s conveyance to her of real estate, and one which, if the transaction was free from fraud, his creditors could not question. National Bank v. Tavener, 130 Mass. 407; Medsker v. Bonebrake, 108 U. S. 66.
Even on the supposition that the rights of Mrs. Kearnej’in respect to the $4,000 were regulated by the common law, she held a claim against her husband enforcible in equity; but we find in Durfee v. Mc Clurg, 6 Mich. 223, that in Michigan, the property rights of married women were not regulated by the common law, and that a married women might contract with reference to her property, real or personal, in the same manner, and with like effect as if she were sole. It is true that a fraudulent intent is usually to be gathered from the facts and circumstances in evidence; but there must be proof of some fact or circumstance, connected with the transaction, from which fraud may be legitimately inferred ; and if, in the transaction we are now considering, the defendant was chargeable with any act which would warrant an inference of a fraudulent purpose, the record does not disclose it.
But even on the supposition that there was evidence from *470 which some wrongful intent might be inferred, there is a weakness in the case made by the plaintiff that would materially detract from the force with which it might otherwise appeal to a court. The judgment sued upon was recovered on the 17th day of May, 1888. The defendant’s trust deed to Richardson, which was the first instrument affecting the title to the land executed by the defendant, was made on Januaiy 8, 1892, nearly four years afterwards. Whether the plaintiff filed a transcript of the docket entry of his judgment, with the Arapahoe county recorder, does not appear. If he did so before the execution of this trust deed, then the judgment was a lien upon the property, good for six years from the entry of the judgment, and both the trust deed to Richardson, and the conveyance to Ottanfa, were subject to his lien. See Civil Code, section 232. But it appears that, whether he acquired a lien or not, he never made any effort of any kind to collect his judgment. From the time of its rendition, to the time when this action was commenced, a period of eight years, he caused no execution to be issued, and suffered the judgment itself to become dormant. It is evident that he failed to make the money on his judgment through his own gross negligence, and that the transactions of which he complains did him no harm. Surely, he should not be allowed to charge up against the defendant a delay for which he alone was responsible. Down almost to the time when he made the transfer to his wife of the interest in the lease, the defendant was the owner of unincumbered real estate, which, if the plaintiff had exercised any diligence at all, he might readily have subjected to the payment of his judgment, but he negligently allowed that property to slip away. From the beginning he manifested an utter indifference to his interests. There was no need of any effort by the defendant to escape from him, for he was not pursuing. After neglecting a plain opportunity to make his money, he continued quiescent and immovable, while the defendant was acquiring other property, transferring it to his wife, and she dealing in it and disposing of it, and then *471 long after these transactions were all ended and left behind, he suddenly bestirred himself to allege that the property was transferred so as to hinder and delaj’- him. A party desiring the assistance of a court, is bound to exercise some diligence in the assertion of his rights. How could the plaintiff be hindered or delayed when he was entertaining ntr thought of moving? There must come a time when a transaction is too ancient to be used as a ground for attachment, and we think the limit was reached here.' •
The assignment of errors is confined to instructions given and refused, but the motion for a nonsuit should have been allowed, and it is, therefore, immaterial what the instructions were, or what they were not. The facts were not in dispute, there was nothing for the jury to find, and errors committed in asubmission which should not have been made, are not available. The jury simply rendered the same decision the court should have rendered without consulting them, and as, upon the facts, the judgment was right, it must be affirmed.

Affirmed.