[No. 3832.]

## BONFILS v. GILLESPIE.

1. EVIDENCE—*Admissions in Pleading.*   In an action upon the judgment of the court of another state, the admission that such court is a court of record, the service of process, and appearance, and the non-.payment of the judgment disposes of all questions as to the existence of the judgment unsatisfied, and the jurisdiction of the court, both as to the person and subject matter.

2. FOREIGN LAW—*Presumptions.*   There is no presumption of law that the statutes of another state regulating the practice of the courts are identical with those of this state.

3. EVIDENCE—*Judicial Notice—Decisions of Other States.*   In an action upon a judgment rendered in another state the court will invoke the decisions of the court of final·resort of that state as to the rules of pleading which there obtain.

4. CONSTITUTIONAL LAW—*Judgment of Another State.*   The judgment of a court of another state, having jurisdiction, is conclusive upon the merits.   The defendant will not be heard to deny its obligation, nor to impeach it for fraud in obtaining it, save in cases where the court in which the judgment was given, would, itself, allow the defense, in an action upon the judgment.

*Appeal from Denver District Court.*   Hon. HARRY C. RIDDLE, Judge.

Mr. JOHN T. BOTTOM for appellant.

Mr. T. F. WATTERS and Mr. PERCY S. MORRIS for appellee.

BELL, J.

In May, 1909, J. M. Burnell, assignor of appellee herein, recovered judgment in the district court of Es-

meralda County, Nevada, against appellant for $750.00 and costs of suit. Subsequently, Burnell assigned the judgment to said appellee, who afterward brought suit on it against appellant in the district court of Denver, Colorado, and recovered a judgment therein in his favor in the sum of $1,022.05, from which last named judgment appeal was taken.

In the proceedings in Nevada, appellant was duly served with process, and retained Mullins & Byrne, Esq'rs, as his attorneys, who appeared for him, obtained a stipulation in writing from plaintiff's attorneys for additional time in which to plead, and subsequently filed an answer to the complaint, and the record of the court shows that, something like fifteen months afterward, the case was set for trial, and later tried without the presence of appellant or his attorneys.

In his amended answer filed to the complaint in the Denver district court, appellant admits the suit and judgment in Nevada; that said judgment has not been satisfied in whole or part; that the court in which it was rendered is a court of record; but denies the jurisdiction of said court, and that the judgment was legally assigned, and alleges, on information and belief, that the trial resulting in said judgment was had without notice to him or his attorneys, and that the plaintiff therein and his attorneys knew when said judgment was obtained that he, the appellant, was not indebted as claimed by them. At the trial in the Denver district court, appellee introduced in evidence the record of the original action properly certified and authenticated, showing that the court there had jurisdiction of the person of the appellant, and of the subject matter, and that a trial was had and judgment rendered in favor of the assignor of the appellee for $750.00 with costs, and that the same remains unpaid, not appealed from, and in full force and effect. Appellant admits the service, appearance, non-

payment of the judgment, and that the trial court in Nevada was a court of record. This effectually disposes of the questions of jurisdiction as to the person and subject matter, and of the existence of the judgment unsatisfied in the Nevada court.—2 Black on Judgments, 2nd ed., sec. 875.

Appellant contends that his answer in the original action contained, in effect, a set-off, which is new matter, and that no replication was filed thereto. On the strength of this, his counsel, assuming that the code and statutes of Nevada are similar to those of Colorado, argues that the claim of set-off was not controverted, and infers that the same is therefore admitted. There does not seem to be any such presumption of law as counsel assumes.—*Loveland v. Kearney,* 14 Colo. App., 468, 469, 60 Pac., 584; *Sullivan v. Bank,* 18 Colo. App., 99, 103, 104, 70 Pac., 162; *Wolf v. Burke,* 18 Colo., 264, 268, 32 Pac., 427, 19 L. R. A., 792; *Wells v. Schuster-Hax National Bank,* 23 Colo., 534, 536, 537, 48 Pac., 809; *Baxter v. Beckwith, ante* 322, 137 Pac., 901.

Under the conditions of the record before us, we have the right to invoke the aid of the decisions of the highest court of the state of Nevada, and, from those, it seems that new matter is presumed to be denied by operation of law, and that the filing of a replication is unnecessary.—*Cahill v. Hirschman,* 6 Nev., 57, 60; *Loveland v. Kearney,* 14 Colo. App., 468, 469, 60 Pac., 584; *Sullivan v. Bank,* 18 Colo. App., 99, 103, 104, 70 Pac., 162; *Wells v. Schuster-Hax National Bank,* 23 Colo., 534, 536, 537, 48 Pac., 809; *Baxter v. Beckwith, ante* 322, 137 Pac., 901.

Counsel insists that the Nevada judgment is only *prima facie* evidence of the debt, and that *nul tiel record* is an inappropriate plea to suits upon foreign judgments, inasmuch as they do not create a merger, and are

only *prima facie* evidence of an indebtedness, and that either debt or assumpsit may be maintained upon them or upon the original indebtedness, and the general issue in such cases is *nil debet* or *non assumpsit,* as the case may be, and puts in issue both the validity of the judgment and of the debt; and counsel cites many authorities in support of this proposition. These authorities are not pertinent to the question here involved, as, since the adoption of Art. IV, sec. 1, of the federal constitution and an act of congress in pursuance thereof approved May 26, 1790 (U. S. Revised Statutes, sec. 905), there has been a well marked distinction recognized between foreign judgments and judgments of sister states. Said section of the federal constitution provides that full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state, and that congress may by general laws prescribe the manner in which such acts, records, and proceedings shall be proved, and the effect thereof. The act of congress, *supra,* provides that the records and judicial proceedings of the courts of any state shall be proved or admitted in any other court within the United States by the attestation of the clerk, and the seal of the court annexed, if there be a seal, together with the certificate of the judge, chief justice or presiding magistrate, as the case may be, that said attestation is in due form. And the said record and judicial proceedings, authenticated as aforesaid, shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the state from whence the said records are or shall be taken. After the adoption of said constitutional provision and approval of said act of congress, there was great chaos and diversity of opinion among the courts of the different states as to the intention of the constitutional convention and congress in their several utterances as to

the effect of judgments of sister state courts when sued upon in courts of other states or of the United States. In 1813 those provisions were construed by the supreme court of the United States, and that court held that the constitution contemplated a power in congress to give a conclusive effect to such judgments, the court saying:

"We can perceive no rational interpretation of the act of congress, unless it declare a judgment conclusive when a court of the particular state where it is rendered would pronounce the same decision."—*Mills v. Duryee,* 7 Cranch, 481, 3 L. Ed., 411; 2 Black, *supra,* sec. 856.

In the *Mills-Duryee* case, *supra,* Justice Story, speaking for the court, also said:

"Were the construction contended for by the plaintiff in error to prevail, that judgments of the state courts ought to be considered *prima facie* evidence only, this clause in the constitution would be utterly unimportant and illusory. The common law would give such judgments precisely the same effect. It is manifest, however, that the constitution contemplated a power in congress to give a conclusive effect to such judgments," and held that,

"If it be a record, conclusive between the parties, it cannot be denied but by the plea of *nul tiel record.*"

This holding by the court, however, has been confined to the general issue, and was never intended to exclude such plea as a denial of the jurisdiction. The *Mills-Duryee* case is a leading authority for the proposition that a judgment of a sister state is conclusive on the merits; that, for purposes of pleading and evidence, it is entitled to the full dignity of a record; and that the defendant is not at liberty, when sued on the judgment, to deny the indebtedness, which it ascertains and establishes, or to impeach its justice or deny its obligation.— 2 Black, *supra,* sec. 856.

Counsel for appellant cites many decisions perti-

nent to suits on foreign judgments, and among them is that of *Hilton v. Guyot,* 159 U. S., 113, 182, 16 Sup. Ct., 139, 40 L. Ed., 95, which was an action brought in the circuit court of the United States, in the southern district of New York, upon a judgment rendered in the republic of France. Hon. Elihu Root filed a masterly brief in the case, and Justice Gray delivered an exhaustive opinion for the supreme court, reviewing the trial had in the circuit court, and, throughout, court and counsel recognized a marked distinction between the effect given to a foreign judgment governed by the comity of states and international law, and the effect given to judgments of sister states controlled by the positive constitutional and congressional provisions aforesaid. Justice Gray, at page 182 (16 Sup. Ct., 150, 40 L. Ed., 95), epitomized the doctrine in the following language:

"The decisions of this court have clearly recognized that judgments of a foreign state are *prima facie* evidence only, and that but for these constitutional and legislative provisions, judgments of a state of the Union, when sued upon in another state, would have no greater effect."

However, the modern tendency of the decisions, in this country, is toward holding foreign judgments *in personam,* rendered by courts having jurisdiction, to be conclusive on the merits.—2 Black, *supra,* sec. 829, and authorities cited.

There is no sufficient pleading or tender of proof in the record tending to show that the original judgment was obtained by such fraud as would entitle appellant to relief in the Denver district court. In *Hanley v. Donoghue,* 116 U. S., 146, 29 L. Ed., 535, 6 Sup. Ct., 242, the court drew the distinction between foreign judgments and judgments of sister states, and, in connection therewith, on the question of fraud, said:

"Judgments recovered in one state of the Union, when proved in the courts of another, differ from judg-

ments recovered in a foreign country in no other respect than that of not being re-examinable upon the merits, nor impeachable for fraud in obtaining them, if rendered by a court having jurisdiction of the cause and of the parties.''

Under the foregoing rule, the injured party is required to resort to the court that rendered the judgment, except in cases where the original court would itself allow the defense of fraud in an action upon the judgment. —*Wyoming Mfg. Co. v. Mohler* (Pa.), 17 Atl., 31; 2 Black, *supra,* sec. 917.

The general rule, subject to the exception above stated, was expressed in the case of *Wyoming Mfg. Co. v. Mohler, supra,* in the following language:

''If the judgment was rendered in West Virginia by fraud or collusion, the court in which it was entered is the proper one to redress the wrong. It is a matter with which we have nothing to do.''

There are other minor questions presented by counsel for appellant, which we have examined, and, from the condition of the record and otherwise, found untenable and insufficient to reverse the judgment; therefore, the judgment is hereby affirmed.

*Affirmed.*

Decided February 11, A. D. 1914. Rehearing denied April 13, A. D. 1914.