Morgan, J.
*218 Writ of error to reverse a judgment obtained by Mrs. Wyatt in the Denver District Court against the defendants there, plaintiffs in error here, on a judgment she had previously obtained against the defendants in the state of Texas.-
The first contention is that the Texas judgment sued upon showed on its face that it was in favor of Nannie D. Wyatt, and that the suit had been brought by Nannie D. Morris, and that there was nothing in the authenticated copy of the proceedings showing that the names referred to the same person. The judgment shows on its face that — “the plaintiff, Nannie D. Morris, whose name is now-Nannie D; Wyatt do have and recover, etc.,”' and again it shows that —“the plaintiff Nannie D. Wyatt nee Nannie D. Morris-be and she is hereby, etc.” It is concluded from these statements in the judgment that this contention is without merit.
The next and the principal contention is that the Texas judgment sued upon was a recovery on a penal statute of the state of Texas, and, therefore, the courts of this state should decline to enforce such judgment, because “the courts of -no country execute the penal laws of another,” as stated by Chief Justice Marshall in The Antelope ease, 10 Wheat., 66, 123.
To reach a conclusion herein it is convenient to state two general propositions of law; first, — as a general rule the laws of a nation have no extra-territorial force, except upon the. principles of comity; and, between the states of this. Union, the same rule applies, except as governed by the “full faith and credit” clause of the constitution of the United States and the acts of Congress; second, — the general rule, as between the states of this Union, without the full faith and credit clause, aforesaid, the duly authenticated “judicial proceedings” and judgments of a sister state, would be only prima, facie evidence thereof in a suit thereupon in another state, but, under the full faith and credit clause, aforesaid, any duly authenticated record of the proceedings and judgment from the courts of another state are given full faith *219 and credit when sued upon in a sister state, subject to a few generally accepted exceptions, to-wit: the judgment sued upon in a sister state may be inquired into for the purpose of ascertaining whether the tribunal in which it was obtained had jurisdiction, and whether it was obtained through the enforcement of a penal law of the other state; and it has been held, also, that its enforcement in a sister state may depend upon whether the law ünder which it was obtained is repugnant to'justice or good morals, or offends the policy of the state in which it is sought to be enforced, or is calculated to injure such state or its citizens.
Therefore the question here is, was the lower court, ■when it recognized the Texas judgment and enforced it, executing a penal law of the state of Texas, within the exception above stated. Upon the weight of authority, this question must be answered in the negative, and the judgment affirmed.
Mrs. Wyatt recovered the judgment in Texas by virtue of its usury law which provides that:
“If usurious interest, as defined by the preceding articles, shall hereafter be received or collected, the person or persons paying the same, or their legal representatives, may by action of debt, instituted in any court of this state having jurisdiction thereof, within two years after such payment, recover from the person, firm or corporation receiving the same, double the amount of the interest so received or collected.”
It has been held by the Supreme Court of Texas in Baum v. Daniels, 118 S. W. 754, 757, that the foregoing statute is only.“penal in its nature,” and that an action for recovery under said statute “is a civil suit, and the judgment rendered is a civil recovery, and not a conviction of a crime.” Such decision is not referred to as binding upon the courts of this state, but it is cited for the reason that it shows a construction of the statute by the court of the state enacting it, and must have its weight in determining the principal question *220 involved, that is, whether the judgment sued upon herein was recovered through the enforcement of a penal law, on the hypothesis that this court may go behind the judgment sued upon and determine that question.
In the case of Huntington v. Attrill, 146 U. S., 657, 667, 13 Sup. Ct., 224, 227 (36 L. Ed. 1123), Justice Gray, discussing the maxim stated in The Antelope case, supra, and citing United States v. Reisinger, 128 U. S., 398, 402, 9 Sup. Ct., 99, 32 L. Ed. 480, and United States v. Chouteau, 102 U. S., 603, 611, 26 L. Ed. 246, said:
“In the municipal law of England and America, the words ‘penal’ and ‘penalty’ have been used in various senses. Strictly and primarily they denote punishment whether corporal or pecuniary, imposed and enforced by the state for a crime or offense against its laws.”
The learned justice further says:
“Penal laws, strictly and properly, are those imposing punishment for an offense committed against the state, and which, by the English and American constitutions, the executive of the state has the power to pardon. Statutes giving a private action against the wrongdoer are sometimes spoken of as penal in their nature, but in such cases it has been pointed out that neither the liability imposed nor the remedy given is strictly penal.” Id.
Huntington v. Attrill has been followed, in its construction, as to what is a penal law in an international sense, in the following cases: Brady v. Daly, 175 U. S., 148, 20 Sup. Ct., 62, 65, 44 L. Ed. 109; Boston & M. R. R. v. Hurd, 108 Fed., 116, 119, 47 C. C. A. 615, 56 L. R. A. 193; City of Atlanta v. Chattanooga F. & P. Works, 127 Fed., 23, 29, 61 C. C. A. 387, 64 L. R. A. 721; Malloy v. Amer. H. & L. Co., (C. C.), 148 Fed., 482, 483; Gruetter v. Cumberland T. & T. Co., (C. C.), 181 Fed., 248, 255; Langdon v. Penn. R. R. Co., (D. C.), 194 Fed., 486, 495; Strait v. Yazoo & M. Co., 209 Fed., 157, 164, 126 C. C. A. 105, 49 L. R. A. (N. S.), 1068; Higgins v. Central, etc., R., 155 Mass., 176, 29 N. E. *221 534, 31 Am. St. Rep. 544. Following these cases, it is concluded that, while the statute is penal in its nature, it is not penal in an international sense; in other words, the judgment upon it is the same as if recovered in any civil action, So far as its enforcement is concerned here.
It has been held that if the recovery allowed is more than mere compensation the statute is considered penal in part, in an international sense, but such holding is not universal. A few cases to that effect are: The State v. C., B. & Q. R. Co. (C. C.), 37 Fed., 497, 3 L. R. A. 554; Dale v. A., T. & S. F. R. R. Co., 57 Kan., 601, 47 Pac., 521; Raisor v. Chic. & A. R. Co., 215 Ill., 47, 74 N. E., 69, 106 Am. St. Rep., 153, 2 Ann. Cas. 802; First Nat. Bank v. Price et al., 33 Md., 487, 3 Am. Rep. 204; Cristilly v. Warner, 87 Conn., 461, 88 Atl., 711, 51 L. R. A. (N. S.) 415. Some of these cases, and others not cited, base the conclusion upon the decisions in the jurisdiction of the statute construing it, and others on the ground that the statute is contrary to the policy of the forum where the action is brought, and others cannot be distinguished.
In instances where the state is the complainant, under the statute, and where the statute provides a recovery for the benefit of the state in vindication of its public rights, many of the decisions are plain that the statute is penal in the international sense, and will not be enforced or adjudicated in another state, even if a judgment has been first obtained in the state where the statute was enacted. Wisconsin v. The Pelican Ins. Co., 127 U. S., 220; State of Ark. v. Bowen, 20 D. C., 291; Huntington v. Attrill, supra.
But great difficulties are presented, and the authorities are conflicting, when the complainant under the statute is a private citizen, and the- statute authorizes a civil action to recover in his favor, and for his use. In such instances two conditions arise; first, when a judgment has been obtained in the state where the law was enacted, and second, where a suit is brought in a sister state without first obtaining a *222 judgment in the state where the law was enacted. In the present case, judgment was first recovered in the state of Texas, and suit was brought upon it here; but, as held in the Pelican case, supra, this court will not distinguish between the two conditions. It is sufficient to say that a few courts have thought the distinction worth of notice. These cases, however, seem to extend the full faith and credit clause of the constitution beyond its actual import. These cases are discussed, but not followed, in the Pelican Ins. Co. case, supra.
The weight of authority, and the most logical reasoning, is that the court may go behind the judgment, to ascertain if the court that rendered it had jurisdiction of the subject matter and of the parties, and other exceptions to the full faith and credit clause, only one of which it is thought necessary to consider here, to-wit: whether the judgment was obtained through the enforcement of a penal statute, in an international or interstate sense. Huntington v. Attrill, supra; Bryant v. Ela, supra; The Pelican Ins. Co. case, supra; Lamb v. Poudre River Livestock Co., 132 Fed., 434, 65 C. C. A., 570, 67 L. R. A., 558; 2 Black on Judgments, sec. 870.
, The statute of Texas, by virtue of which the judgment sued upon was obtained, was held to be “penal in its nature" in the case of Baum v. Daniels, supra, and such a statute in this state would no doubt be held to be penal in its nature by the courts of this state as indicated in the case of Jenet v. Albers, 7 Colo. App., 271, 274, 43 Pac., 452, and Fairbanks & Co. v. McLeod, 8 Colo. App., 190, 193, 45 Pac., 282; consequently the only question is, as heretofore stated, — was the Texas statute penal in its interstate sense? Or, — does it come within that particular exception to the full faith and credit clause of the constitution and act of Congress? It does not inexorably follow, because a statute is penal in its nature and allows a recovery by a private citizen for a penalty prescribed, that it is penal in its interstate sense when *223 subjected to the crucible provided by the full faith and credit clause aforesaid. Huntington v. Attrill, supra. The courts of each state may decide such question for themselves. Each state has the right to decide whether its sovereignty has been invaded, subject only to the provisions of the Federal Constitution and the. acts of Congress. Bryant v. Ela, supra; Dougherty v. Am. McKenna Co., 255 Ill., 369, 99 N. E., 619, Ann. Cas. 1913D, 568.
While the states of this Union are independent sovereignties, except only so far as the constitution of the United States consolidates them, nevertheless they are sister states, allied by a comity much closer than nations, generally, as '.they have indicated by the power they have delegated through the constitution to the Congress, clearly showing an intention to encourage a .similarity of laws and judicial proceedings, and to establish between themselves a comity closer than that recognized by international law; and unless the public acts and judicial proceedings of one state invade the sovereignty of another, the courts of a sister state should not be astute to find or search for an excuse to deny that full faith and credit which they have required in the Federal Constitution, but each state should recognize and enforce the public acts and judgments of a sister state, when not coming clearly within one or more of the exceptions.
It was said by Justice Gray in the Huntington v. Attrill case that:
“The test is not by what name the statute is called by the legislature, or the court of the state in which it was passed, but whether it appears to the tribunal, which is called upon to enforce it, to be, in its essential character and effect, a punishment of an offense against the public, or a grant of a civil right to a private person.”
It was said in the case of Lamb v. Poudre R. L. Co., supra, that the judgment of a court of one state “gives a right of action for its enforcement, subject to limitations or other laws of the forum, which regulate, but do not deny, *224 unreasonably restrict, or oppressively burden, the exercise of that right.”
Decided March 8th, A. D. 1915.
Rehearing denied April 12th, A. D. 1915.
It was said by this court in Bonfils v. Gillespie, 25 Colo. App., 496, 499, 139 Pac., 1054, “that there has been a well marked distinction between foreign judgments and judgments of sister states,” since-the adoption of Art. 4, Sec. 1, of the Federal Constitution and the Act of Congress in pursuance thereof, which provide that “full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state.”
The statutes of Texas provide no other way to insure obedience to its usury law; and the taking of interest, more than the rate prescribed, is not denominated a crime or misdemeanor, nor is any fine imposed for its violation, nor is there any provision permitting the state to recover anything, itself, by reason of the law, hence it is in no sense a criminal law, nor strictly penal, in an interstate sense.
In following the Huntington v. Attrill case, and the Federal cases above cited, and holding that the Texas statute is not penal in an international sense, and that judgments of one state, which will not be enforced in a sister state should be confined to those concerning “public wrongs as distinguished from private rights,” this court upholds that comity between the states that it believes was intended by the full faith and credit clause of the constitution and the act of Congress.

Judgment Affirmed.