169 N.J. Super. 156 (1979)
404 A.2d 360
CITY OF PHILADELPHIA, PLAINTIFF-APPELLANT,
v.
GEORGE A. SMITH, JR., CHARLES W. BONNES, JAMES L. ALESI, WILLIAM A. BERENATO, MYRL P. EVANS, ANDREW FELIX BELLA, SR., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted May 14, 1979.
Decided June 26, 1979.
*157 Before Judges CONFORD, PRESSLER and KING.
Mr. Charles Crabbe Thomas attorney for appellant.
Messrs. Laskin & Botcheos, attorneys for respondents (Mr. George J. Botcheos on the brief).
The opinion of the court was delivered by KING, J.A.D.
This case presents the question of whether the Full Faith and Credit Clause of the Federal Constitution compels a state to recognize that portion of a foreign judgment representing a civil penalty for unpaid taxes. This question has never been squarely answered by the United States Supreme Court or by any reported appellate decision known to us.[1]
The City of Philadelphia brought these consolidated actions in the Camden County District Court on judgments previously obtained in the courts of the Commonwealth of Pennsylvania against defendants, New Jersey residents, who are federal employees working in the city. Defendants' federal *158 employer does not withhold the city's wage tax. See 5 U.S.C.A. § 5520. These Pennsylvania judgments include the unpaid city wage tax, costs and interests thereon, and the amount of the civil penalty. The respective amounts are as follows:

Taxpayer-defendant Taxes, Costs
 and Interest Penalty
Smith $2,401.21 $408.35
Alesi 2,216.15 358.76
Berenato 1,904.39 311.34
Evans 1,494.10 235.79
Bella 1,413.64 231.18

The trial judge entered judgments for the city in the amount of the unpaid taxes, costs and interest thereon, but refused to include the amount of the penalty in the judgments. He held that a tax penalty imposed by a sister state or its political subdivision, although included in an otherwise valid judgment of that state, was unenforceable in this State to the extent of the penalty.
On this appeal defendants do not attack the validity of the Pennsylvania judgments or their general enforceability in this State. They attack only the civil penalty component of the judgments. Section 9-508 of the Philadelphia Code states:
* * * if any tax * * * is not paid when due * * * a penalty at the rate of 1% of the amount of the unpaid tax shall be added for each month * * * during which the tax shall remain unpaid and shall be collected, together with the amount of the tax.
Therefore the tax penalty is a direct function of the underlying tax liability.
Defendants urge that the holding of our Supreme Court in Buckley v. Huston, 60 N.J. 472 (1972), compels affirmance. That case confirmed the common-law right of the City of Philadelphia to proceed in the courts of New Jersey to recover wage taxes due the city. In Buckley Justice Jacobs carefully reviewed the historical underpinnings of *159 the old English and early American cases denying a foreign sovereign's right to sue for collection of taxes. There is language in Buckley which strongly suggests that the courts of this State will not entertain an initial action to the extent that it seeks to recover a foreign tax penalty. Id. at 481-482. But we are not here confronted with an initial suit to recover a penalty; the city has already obtained its judgments in Pennsylvania. These suits on foreign judgments implicate the Full Faith and Credit Clause, a consideration not pertinent to the court's decision in Buckley. The city contends that the privilege of refusing enforcement to a judgment of a sister state is a narrow one and does not admit exception in this case.
The general principle has been stated by Professor Leflar thus:
It is safe to say that any valid civil judgment rendered in any state or territory of the United States is entitled to full faith and credit in the courts of every sister state and territory, subject only to the limitations of the second state's bona fide procedural rule. That is true even though the original cause of action upon which the first judgment was rendered was one upon which the second state would not in the first place have entertained an action. The local public policy of the second state, however strong it may be, is not a ground for denying full faith and credit to a valid sister state judgment. [Leflar, American Conflicts Law (3 ed. 1977), § 75 at 150]
Historically, claims for taxes and tax judgments were long denied extra-state enforcement, but "it is now clear that valid sister state judgments on tax claims, nonpenal in nature, must be given full faith and credit in other states." Id. at 151; Milwaukee Cty. v. M.E. White Co., 296 U.S. 268, 56 S.Ct. 229, 80 L.Ed. 220 (1935). On the other hand, the question remains unresolved whether and to what extent full faith and credit must be afforded the penalty provisions of a sister state's tax judgment. On this point the Restatement, Conflict of Laws 2d, § 120 at 345-346, comment (d) (1971), states: *160 * * * It is uncertain, however, whether full faith and credit requires a State of the United States to enforce a valid money judgment on a penal cause of action rendered in a sister State. Full faith and credit does not permit a State to look through a sister State judgment for the recovery of money and to refuse to enforce the judgment because the underlying cause of action was contrary to its public policy (see § 117), or was barred by its local statute of limitations (see § 118), or was on a governmental claim that is not penal (see Comment b), or because the State lacked a competent court for the enforcement of the original cause of action (see § 117, Comment d), or because the original suit was brought by one not a real party in interest (see § 119). The Supreme Court of the United States has never squarely decided whether a State may look through the valid money judgment of a sister State and refuse to enforce the judgment on the ground that it was based on a penal cause of action.
The Reporter's Note states that in Milwaukee Cty. v. M.E. White Co., supra, "the Supreme Court expressly reserved the question whether a sister State judgment for a penalty in the international sense is entitled to full faith and credit." Restatement, supra at 347. While the opinion of then Associate Justice Stone in Milwaukee County does not squarely decide the question we think it strongly points toward declaring the proposition that these judgments are enforceable under the constitutional mandate that "Full Faith and Credit shall be given in each State to the Public Acts, Records, and judicial proceedings of every other State." U.S. Const., Art. IV, § 1.
In Milwaukee County plaintiff, a county and citizen of Wisconsin, brought suit in a Federal District Court in Illinois to recover on a $52,165.84 judgment which had been entered against defendant in a Wisconsin court of general original jurisdiction. The judgment was based on taxes assessed against income and included a penalty of 2% for delinquent payment. Id. 296 U.S. at 279-280, 56 S.Ct. 229. The United States Supreme Court held that the judgment of the Wisconsin court was entitled to full faith and credit in its entirety. The Supreme Court's opinion allowed recovery for the 2% penalty and commented cryptically that *161 "the record does not disclose that the nominal penalty arose under a penal law or is of such a nature as to preclude suit to recover it outside the State of Wisconsin." Id. at 280, 56 S.Ct. at 235. This came after the statement in the preceding paragraph that the court "intimat[ed] no opinion" on the enforceability of a penal obligation. Id. at 279, 56 S.Ct. at 235.
In deciding that the Wisconsin judgment for taxes, including the 2% penalty, was enforceable, the Supreme Court observed in Milwaukee County that "[a] cause of action on a judgment is different from that upon which the judgment was entered." Id. at 275, 56 S.Ct. at 233. The court noted that recovery on a foreign judgment can be resisted only if (1) the rendering court was without jurisdiction, (2) the obligation had been discharged as by payment, (3) was based on a cause of action for which the forum state had not provided a court or (4) because procured by fraud. Id. at 275-276, 56 S.Ct. 229. The court recited the historic justification for the Full Faith and Credit Clause in the Constitution which created a federal union from 13 previously sovereign states as follows:
* * * The very purpose of the full faith and credit clause was to alter the status of the several states as independent foreign sovereignties, each free to ignore obligations created under the laws or by the judicial proceedings of the others, and to make them integral parts of a single nation throughout which a remedy upon a just obligation might be demanded as of right, irrespective of the state of its origin. That purpose ought not lightly to be set aside out of deference to a local policy which, if it exists, would seem to be too trivial to merit serious consideration when weighed against the policy of the constitutional provision and the interest of the state whose judgment is challenged. In the circumstances here disclosed no state can be said to have a legitimate policy against payment of its neighbor's taxes, the obligation of which has been judicially established by courts to whose judgments in practically every other instance it must give full faith and credit. [296 U.S. 276-277, 56 S.Ct. at 234]
The Supreme Court in Milwaukee County placed substantial reliance on a case decided a year before by our then *162 highest State court, New York v. Coe, 112 N.J.L. 536 (E. & A. 1934), in deciding that the Wisconsin judgment for taxes was fully enforceable. Supra, 296 U.S. at 279-280, 56 S.Ct. 229. The Coe case does not squarely decide the civil tax penalty question but strongly suggests enforceability.
There the State of New York sued on a judgment of that state obtained for nonpayment of corporate franchise taxes by defendant corporation, foreign to New York. The New York taxing statute provided for the tax to be paid annually, computed on the basis of net income. The statute stated that an "action might be brought at any time to recover the amount of the tax, penalties, and interest." Id. at 537-538. The Court of Errors and Appeals held that the New York tax statute was not "penal in its nature." Id. at 538. By enforcing the foreign judgment this State was not therefore enforcing the penal laws of New York. The court stated: "The wrong in this case is to the state as an individual and not to the public as an injured party." Ibid. Of further interest the court observed in Coe:
It is true the statute imposed certain penalties for failure to comply with the obligation thus assumed, but these were nothing more than the obligation frequently imposed in ordinary contracts between individuals and became as it were liquidated damages for the breach. [at 539]
Although the court in Coe did not expressly state that the New York judgment actually contained a penalty component, we may only infer from the tenor of the opinion that it did.
In the classic remark of Chief Justice Marshall, the "courts of no country execute the penal laws of another." The Antelope, 23 U.S. 66, 123, 6 L.Ed. 268, 282 (10 Wheat. 66) (1825). However, the distinction must be drawn between judgments that are primarily punitive rather than compensatory in nature. The authoritative definition of penalty for purposes of U.S. Const., Art. IV, § 1, is stated in Huntington v. Atrill, 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed. 1123 (1892) as one whose "purpose is to punish an offense against *163 the public justice of the state" as distinguished from one whose purpose is "to afford a private remedy to a person injured by the wrongful act" of the defendant. See Leflar, supra at 151; Leflar, "Extrastate Enforcement of Penal and Governmental Claims," 46 Harv. L. Rev. 193 (1932); Comment, "Extrastate Enforcement of Penal Laws," 25 U. Chi. L. Rev. 187 (1957); Restatement, supra. The mere fact that a primarily "compensatory" claim runs in favor of a governmental entity is not sufficient grounds for denying extraterritorial effect. New York v. Coe, supra 112 N.J.L. at 538.
Although the controlling precedents, Milwaukee County v. White Co., supra, and New York v. Coe Mfg. Co., supra, are not conclusive, we believe that they point to the result that a sum for civil penalties for nonpayment of taxes measured as a percentage of the debt of the individual taxpayer and comprising part of a civil judgment which also includes unpaid taxes, costs and interest is entitled to full faith and credit. Patently, the primary purpose of the Philadelphia Code § 19-508 civil "penalty" provision is compensatory, i.e., to afford the public entity of private remedy for the loss of wage tax revenues. Wilentz v. Hendrickson, 135 N.J. Eq. 244, 256 (E. & A. 1944) (interest of 1% a month on railroad tax arrears is compensatory). We find this obligation no different in kind from a money judgment rendered in a civil suit that includes punitive damages, which judgment is clearly subject to full faith and credit. In Magnolia Petroleum Co. v. Hunt, 320 U.S. 430, 438, 64 S.Ct. 208, 213, 88 L.Ed. 149 (1943), the court stated, "[w]e are aware of no * * * exception [to the command of full faith and credit] in the case of a money judgment rendered in a civil suit." See also, Restatement, supra § 100 at 304-305; Restatement, supra, § 120 at 346-347, comment (d), and examples reported therein, including Interstate Savings & Trust Co. v. Wyatt, 27 Colo. 217, 147 P. 444 (Sup. Ct. 1915) (judgment for double the amount of usurious interest); Healy v. Root, 28 Mass. (11 Pick.) 389 (Sup. Jud. Ct. 1831) (judgment providing for recovery by an informer of a penalty, *164 part of which went to state); Adams v. Dick, 103 Misc. 259, 170 N.Y.S. 17 (Sup. Ct. 1918) (judgment for recovery of money paid broker without making allowance for payments made by him to the plaintiff), where foreign judgments were enforced.
The instant civil penalty serves as an integral part of the tax collection scheme and was adopted to motivate timely payment. Such civil penalties are in no sense unusual or inimical to the policy of New Jersey or federal taxing statutes. We note with interest that N.J.S.A. 54:9-6(c) provides a 9% civil penalty annually for failure to pay the state income tax, and 26 U.S.C.A. 6651(a) provides penalties up to 25% for nonpayment of federal income taxes.
The same section of the Philadelphia ordinance, § 19-508, which provides the civil penalty of 1% of the tax liability for each month of delinquency, also provides in another subsection for a fine of $300 as a penal sanction against any person who, for example, files a false return, refuses to file a return, or violates any license condition of the ordinance. We believe that this latter subsection is the kind of purely penal law which our courts need not enforce since the purpose of the sanction is clearly to "punish an offense against the public justice of [the] state." Huntington v. Atrill, supra. Similarly, we observe that a judgment for a fine obtained by enforcement of a penal law, totally independent of the civil collection remedy, may be unenforceable, but that is not the case before us. Lacking specific authority from the United States Supreme Court or our State Supreme Court excepting that portion of the judgment for these civil penalties from the Full Faith and Credit Clause, we apply "[t]he basic, controlling principle * * * that the forum must accord the foreign judgment the same degree of credit, status and immunity from attack which the judgment would be accorded in the state where rendered." Puzio v. Puzio, 57 N.J. Super. 557, 570 (App.Div. 1959).
Reversed and remanded for entry of judgment consistent with this opinion.
NOTES
[1] In Philadelphia v. Stadler, 164 N.J. Super. 281, 292 (Cty. D. Ct. 1978), a trial court held in favor of the city's right to recover the "nominal" civil penalty therein involved.